[No. 876. Decided December 30, 1893.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES W. NORDSTROM, *Appellant*.

HOMICIDE — PROSECUTION BY INFORMATION — INDORSING NAMES OF WITNESSES — EVIDENCE — INSTRUCTIONS — NEWLY DISCOVERED EVIDENCE.

Infamous crimes may be prosecuted in this state by information, as the constitution of the United States does not assume to regulate prosecutions under state laws.

A preliminary examination on a charge before one justice of the peace, after the dismissal of a charge before another justice without an examination, is sufficient to found an information upon.

A defendant who has been served with a copy of an information against him, with the names of witnesses indorsed thereon, is not entitled to another copy of the information, upon the indorsement of additional witnesses thereon, but notice of the addition of the new names is sufficient.

The personal effects of every kind belonging to a prisoner may be taken from his person and used upon his trial for what they may be worth as criminating evidence.

Where the evidence in a prosecution for murder tends to show that the person who committed the crime had worn a certain pair of rubber boots at the time, and the defendant testifies that he cannot get the boots upon his feet, and makes apparently extraordinary efforts to put them on in the presence of the jury, it is not error to allow a shoemaker to measure defendant's feet and the boots and then testify that a foot of defendant's size could wear the boots; nor is it improper to call other witnesses to put the boots on

in the presence of the jury, and allow the shoemaker, after measuring their feet, to testify that he finds them as large as defendant's.

Where a defendant charged with murder attempts to prove an *alibi* by testifying that he was in a certain saloon on the night of the murder, and the state places the saloon keeper on the stand to rebut defendant's proof, and, for the purpose of proving that the witness had a real recollection that the defendant was not there, rather than a mere absence of recollection as to whether or not he had visited the saloon, it is not error where there is no other objection than to the leading character of the questions, for the saloon keeper to testify that he knew on the day following the crime that defendant was suspected by the people of his locality.

Where a defendant in a criminal prosecution appears as a witness in his own behalf, it is not error for the court to charge the jury that, "in the case of the defendant you have a right to consider the great interest he has in your verdict."

It is not error for the court to refuse to instruct that a failure to prove a motive for the commission of the murder charged would raise a strong presumption of the innocence of the accused.

Where defendant had sworn on his trial that he could not get on certain rubber boots, he is not entitled to a new trial on the ground of newly discovered evidence showing that, while it was possible for him to get the boots on, he could not have worn them.

*Appeal from Superior Court, King County.*

*James Hamilton Lewis* ( *N. Soderberg*, *Arthur E. Griffin*, *E. B. Palmer*, and *Gill & Keene*, of counsel), for appellant.

*John F. Miller*, Prosecuting Attorney, *A. G. McBride*, and *James A. Haight*, for The State.

The opinion of the court was delivered by

Stiles, J.—Again the question is presented here, that the appellant, under the federal constitution, is entitled to have the charge against him presented upon an indictment found by a grand jury. In this instance the contention is based upon the language of the enabling act, which provided that the constitution of Washington should be republican in form, and "not repugnant to the constitution of the United States."

Much learned investigation and ingenious argument have been expended by counsel in an endeavor to impress this court with the view that inasmuch as the constitution of the United States, in prescribing the method of initiating prosecutions for infamous crimes against federal laws, makes the grand jury a *sine qua non*, and its indictment the only lawful means of charging an offense; therefore, the state constitution must conform to the same method, and any authority to prosecute by information must be repugnant to the supreme federal law and void.

We may and do yield assent to all that is thus said, with one exception; and we should be justified in going farther than the argument made, and in holding that if the provisions of the fifth amendment to the federal constitution apply to the matter of prosecutions for crimes against state laws, it would make no difference were there no mention of the federal constitution in the enabling act, or the constitution of the state; the constitution of the United States would still be the supreme law of the land, and all provisions of the state constitution or laws, which were actually repugnant, would be utterly void. Nor could any act of congress make any such provision one whit the less void and inoperative.

But the difficulty is, that the constitution of the United States does not assume or pretend to regulate prosecutions for offenses against state laws, and we see no reason why there should be any departure from the views on this subject expressed in *Lybarger v. State*, 2 Wash. 552 (27 Pac. Rep. 449). See *Spies v. Illinois*, 123 U. S. 131 (8 Sup. Ct. Rep. 21).

2. The information was identical with those in *State v. Freidrich*, 4 Wash. 204 (29 Pac. Rep. 1055), and *State v. Day*, 4 Wash. 104 (29 Pac. Rep. 984).

3. Appellant alleges error because the court below refused to quash the information, upon a showing that he

had not a preliminary examination. But his real ground for the motion was that, whereas a charge was made against him before Justice Neagle, that charge was not pursued, but was dismissed and a new charge made before Justice Von Tobel, before whom there was a full examination. No error.

4. The names of certain witnesses were indorsed upon the information before the trial commenced, by special order of the court, as the statute permits. Code Proc., § 1230.

5. Upon filing the information the prosecuting attorney caused a copy of it, with names of witneses endorsed, to be served upon appellant, and appellant complains because he was not furnished another copy, when the names of new witnesses were added. The evident purpose of the statute (Code. Proc., § 1267) is to apprise the accused, as soon after the information is filed as is reasonably possible, of the charge made against him and the names of leading witnesses. After that, notice of the addition of new names of witnesses meets every reasonable requirement; and there was notice in this case.

6. The state sought to connect the appellant with the homicide by means of certain boot tracks and tracks of feet wearing only socks, impressed in soft or muddy ground near the scene of the crime; and in pursuit of its endeavor called a deputy sheriff to produce the boots and socks of appellant. These articles were taken from appellant's person upon his arrest and were retained by the sheriff to be used as evidence; the boots because it was claimed that they fitted the tracks, and the socks because they were muddy. No force whatever seems to have been used by the officers in getting possession of these things, but they were taken from the prisoner in the course of the usual search of his person, upon his arrival at the jail. Appellant complains of the admission of the boots and socks in

evidence on the ground that they were obtained by an unreasonable search of his person, and that it was a method of compelling him to give evidence against himself; but we cannot sustain his position.    It is generally held that an accused person cannot be compelled to exhibit those portions of his body which are usually covered for the purpose of securing his identification, or in other ways affording evidence against him; though that proposition has been reduced in at least one case to prohibiting exposure only where decency would be infringed. *Ah Chuey v. State*, 14 Nev. 79.

But it has never been held that personal effects of every kind could not be taken from the person of a prisoner and used upon his trial for what they may be worth as criminating evidence. *State v. Graham*, 74 N. C. 646.

The same observations apply to the memorandum book taken from appellant's pocket and exhibited to the jury to show that a leaf found in a cabin in the woods, where it was claimed appellant had been, belonged in his book; and also to the cap which he wore when arrested, and which it was claimed had been hanging on a nail in the same cabin until the night of the homicide.

7.    There was testimony tending to show that the person who fired the shot that killed William Mason had worn a certain pair of rubber boots, which it was conceded did not belong to appellant.    When appellant went upon the stand he testified that he could not get these boots upon his feet, and at the request of his counsel made apparently extraordinary efforts to put them on in the presence of the jury, but without effect.    In rebuttal the state called a shoemaker and had him measure the boots and appellant's feet, whereupon he testified that a foot of that size could wear those boots.    Other persons were then called, and in the presence of the jury they put the boots on, after which the shoemaker measured their feet, and found them at least as

large as appellant's. All this was done against objection, on the ground that the measurement of appellant's feet was compelling him to give evidence against himself. But in our judgment, after the exhibition made by appellant in his apparent efforts to get the boots on, the measurement of his feet was only a legitimate way of cross examining him, and the subsequent testimony of the shoemaker and the other witnesses was proper rebuttal. When the shoemaker took his measurements he had not been sworn, but he was sworn before he gave any testimony.

8. The homicide was committed on Friday evening, November 27, 1891, at 6:30. Appellant, by way of accounting for himself, told of his movements that afternoon and evening, and stated that at a little after eight o'clock he went into the saloon of one Cooper, at Gilman, several miles from the house where deceased was shot, and bought from Cooper a bottle of whisky and a glass of beer, the testimony tending to show an *alibi.* On rebuttal, Cooper was called and testified with some positiveness that appellant was not in his saloon and did not buy anything from him on that night. On cross examination this occurred:

"*Q.* Is it possible he could have come in there on Friday night and bought fifty cents' worth of liquor and you not remember the next day? *A.* Well, I do not think so; I think I should remember it.

"*Q.* Why do you think so? Why would you remember that particularly?"

Many other questions were asked for the purpose of getting an admission that even though the witness had seen appellant on Friday night at his saloon, he might have forgotten it, and the certainty of his recollection was left somewhat shaken. But upon the re-direct, he was asked: "Did you know on Saturday night that this man was suspected of the murder of Willie Mason?" and he answered that he did, and that he had learned the fact about noon of that day.

"*Q.* Did citizens in Gilman talk anything about who they suspected of the crime? (Objected to as leading.)

"*Court:* His question is leading.

"*Q.* The people living there in Gilman? *A.* Yes, sir.

"*Q.* Quite a number of them? *A.* Yes, sir.

"*Q.* You heard them talking? *A.* Yes, sir.

"*Q.* What did you hear them talking? (Objected to as hearsay, immaterial and incompetent.)

"*Court:* Objection overruled.

"*A.* They said a certain man had been suspected; that they suspected him.

"*Q.* Who was that certain man? *A.* That defendant— I forget the name."

The obvious purpose of this examination was to show an additional reason why the witness would not have forgotten the alleged visit of appellant to his saloon the night before, some of the reasons therefor having been challenged on the cross examination; though the court, upon the direct question being asked, whether knowledge that appellant was so suspected would have been likely to perpetuate the fact of such a visit in the witness' mind, sustained an objection to it. Counsel for appellant here urge that this re-direct examination was an unfair and improper method of getting before the jury the fact that the Gilman community not only suspected him of the crime, but believed him to be the guilty party; but we cannot see why any such construction should be put upon the proceeding. The principal questions went unchallenged except on the ground of their leading character, and the whole attention of the court and jury must have been directed, under the circumstances, to the point whether the witness had any real recollection that appellant was not there, or a mere absence of recollection as to whether he had visited the saloon or not. Nothing was related tending to show that any person believed in appellant's guilt, but only that he was suspected, and the very first answer which was not objected to gave that information. No request was made to limit

the jury's consideration of the evidence, and it was evidently thought of but minor importance, as it was not mentioned in appellant's brief in chief.

9. Attention is called to alleged improper remarks of counsel for the state to the jury, and the rulings of the court thereon; but as what was said is not preserved in the statement, we cannot know what the fact was. Affidavits were filed by both sides, but the court was never called upon to settle the truth of the matter.

10. In giving the usual cautionary charge to the jury as to the credit to be given to witnesses, the court used this language: "In the case of the defendant you have a right to consider the great interest he has in your verdict." The statement was true; a jury has a right to consider the interest of every witness (*Dodd v. Mocre*, 91 Ind. 522); and the court does not err in so instructing. Whether in a criminal case, where the defendant testifies under peculiar circumstances, he ought to be singled out as pointedly as was here done may be questionable, but no point is made on that.

11. Numerous verbal criticisms are made of various portions of the instructions, but such portions were either given at the request of the appellant, or were not excepted to. Neither singly nor as a whole do they destroy the fairness or justness of the admirable charge given by the court.

12. Appellant asked the court to instruct that a failure to prove a motive for the commission of the crime would raise a strong presumption that the accused was innocent. There could be no necessity for, nor propriety in, giving such an instruction. The general presumption of innocence covers it fully. The jury were told that this would be a circumstance for them to consider; to have said more would have been to trench upon the prohibition against commenting on the facts. In some cases motive may, as

counsel suggests, be a very material element in determining the degree of a prisoner's guilt; but there could be no such question in this case, for the accused was either guilty of a base assassination, or he was entirely innocent, was not present, and did not fire the fatal shot.

13. The affidavit of Waldrowf, produced on the motion for a new trial, was wholly insufficient for any purpose, relating as it did to nothing but indefinite hearsay about immaterial matters. Claus Berglin undertook to say that while it was possible appellant could have put the rubber boots on, he could not have worn them. Appellant was fully notified before the trial that one of the main points in the case would be whether he had worn those boots or not, and the first thing he did when he went upon the stand was to demonstrate that he could not possibly get them on his feet. We think it is too late now to ask that the case be opened to allow the admission of testimony which would contradict his own sworn statement.

14. The insufficiency of the evidence to justify a conviction is strongly urged. But, as to this point, without extended review, we shall only say, that while it was wholly circumstantial, we doubt whether any impartial reader of it would come to a conclusion different from that arrived at by the jury. Others might, perhaps, hesitate, if burdened with the responsibility of the jury, to give as conclusive effect as they have to the evidence; but all such responsibility, under the facts proven, rested with the jury alone, and they have decided the question, after receiving the fairest possible instructions from the court.

Other points raised were either immaterial or were not sustained by the record, and it is only left for us to direct an affirmance of the judgment, and that the sentence imposed upon the appellant be carried into execution. So ordered.

ANDERS, SCOTT and HOYT, JJ., concur.

DUNBAR, C. J. (*concurring*).—In concurring in this opinion, I wish to say that, if the admission of the testimony of the witness Cooper, concerning the defendant being suspected by the people of Gilman, had been properly and duly assigned as error, I should feel bound to reverse the judgment on that ground, for I think it was most palpable, prejudicial error; but as it was not assigned in appellant's first brief, I will treat it as though it were waived, and hence I concur.