THORNTON, Plaintiff in error, vs. THE STATE, Defendant in error.

*February 27—March 21, 1903.*

*Criminal law and practice: Constitutional law: ·Compelling accused to be a witness against ˙himself: Unreasonable search and seizure: Comparing shoe with tracks in snow: Evidence:* Alibi: *Prior conviction: Instructions.*

1. Such portions of the person or attire of an accused person as are customarily open to observation are legitimate sources from which witnesses may give testimony of the result of such observation; and it is not a forcing of a prisoner to be a witness against himself within the meaning of sec. 8, art. I, Const., to require him to give to witnesses, in court or out of court, an opportunity to make such observation.

2. To require one accused of crime to surrender his shoe to an officer does not constitute an unreasonable search or seizure within the prohibition of the fourth amendment, Const. of U. S., and sec. 11, art. I, Const. of Wis.; and witnesses who have compared the shoe so obtained with tracks in the snow near the place where the crime was committed may properly be allowed to testify to the result of such comparison.

3. In attempting to prove an *alibi* it was not competent to show the time of defendant's arrival at his home on the evening in question by testimony as to his statement of the time, then made in reply to a question by the witness.

4. It was not a prejudicial error to allow a defendant to be asked on cross-examination as to a prior arrest, where this was immediately followed by proof of a prior conviction of an offense.

5. An instruction to the jury to the effect that the testimony as to a prior conviction of another offense was admitted and

was to be considered for no other purpose than that of impeaching or discrediting the credibility of the defendant as a witness in his own behalf, was correct, and it was not necessary for the court to use a milder form of expression even though the prior offense was only drunkenness.

ERROR to review a judgment of the municipal court of the eastern district of Waukesha county: D. S. TULLAR, Judge. *Affirmed.*

A writ of error to review conviction and sentence for assault with intent to commit rape. The testimony of the complaining witness was generally to the effect that as she was going home from church in the city of Waukesha, about 9 o'clock in the evening of March 2, 1902, she was accosted by plaintiff in error with the request that he might escort her home, which she repudiated indignantly; whereupon, after a few words, he made improper proposals to her, and, seizing her, threw her down and made the attempt constituting the offense charged; but, upon her outcry for help and threat of her husband's vengeance, he fled. The defense rested mainly on evidence of the plaintiff in error as to his conduct that evening, tending to prove an *alibi,* in some of the details of which he was confirmed by other evidence. Identification by the complaining witness was positive, but, to confirm it, plaintiff's shoe was taken after his arrest and compared with tracks in the snow at the place of the alleged assault, with which it was claimed to correspond.

*C. E. Armin,* for the plaintiff in error, to the point that by the compelling of the accused to give up his shoe when in custody and under duress he was obliged to furnish evidence against himself, in violation of his constitutional rights, cited *Ex parte Buskett,* 9 Am. Crim. Rep. 760; *State v. Nowell,* 58 N. H. 314; *Ex parte Boscowitz,* 84 Ala. 463; *Temple v. Comm.* 75 Va. 892; *Printz v. Cheeney,* 11 Iowa, 469; *People v. Mather,* 4 Wend. 230; *People v. Hackley,* 24 N. Y. 84;

*People v. Sharp,* 107 N. Y. 427; 1 Burr's Trial, 245; *Stokes v. State,* 5 Baxt. 619, 30 Am. Rep. 72; *People v. Mead,* 50 Mich. 228; *Day v. State,* 63 Ga. 669; *Blackwell v. State,* 67 Ga. 76, 44 Am. Rep. 717.

For the defendant in error there was a brief by the *Attorney General* and *Walter D. Corrigan,* second assistant attorney general, and oral argument by *Mr. Corrigan.*

Dodge, J.  1. The first error assigned is upon admitting evidence of comparison with the tracks left in the snow near the place of the assault of the shoe of the accused, which he gave to the deputy sheriff upon request after his arrest.  The objection urged is that thereby results an invasion of personal rights guaranteed by two clauses of our constitution, namely, sec. 8, art. I: No person "shall be compelled in any criminal case to be a witness against himself;" and sec. 11, art. I: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated."  The constitutional restrictions are but the expression of the unwritten common-law rights which had come to be recognized in England in revolt against the thumbscrew and the rack of early days.  The exact origin of their full establishment is said to be uncertain, but that they had become so established is beyond doubt.  Perhaps their earliest complete expression, at least the most satisfactory one, is to be found in the opinion of Lord Camden in *Entick v. Carrington,* 19 Howell's St. Tr. 1030.  The subject is discussed at large in *Boyd v. United States,* 116 U. S. 616, 627, 6 Sup. Ct. 524; *Brown v. Walker,* 161 U. S. 591, 596, 16 Sup. Ct. 644; and *Bram v. United States,* 168 U. S. 532, 545, 18 Sup. Ct. 183.  This rule and practice of the common law was crystallized and expressed in the fifth amendment to the constitution of the United States in words identical with those above quoted from sec. 8, art. I of our own constitution.  The

meaning and force of that expression was early discussed by Chief Justice MARSHALL upon the trial of Aaron Burr, 1 Burr's Tr. 245, in which he said: ˙

"It is certainly not only a possible, but a probable, case, that a witness, by disclosing a single fact, may complete the testimony against himself, and to a very effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself would be unavailing, but all other facts without it would be insufficient. While that remains concealed in his own bosom, he is safe, but draw it thence and he is exposed to a prosecution. The rule that declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description."

Thenceforward it has become established by almost unanimous concurrence of opinion that the rights intended to be protected by this constitutional provision are so sacred, and the pressure so great towards their relaxation in case where suspicion of guilt is strong and evidence obscure, that it is the duty of the courts to liberally construe the prohibition in favor of private rights, and to refuse to permit those first and doubtful steps which may invade it in any respect. *Boyd v. United States, supra; Counselman v. Hitchcock,* 142 U. S. 547, 12 Sup. Ct. 195; *Bram v. United States, supra; Emery's Case,* 107 Mass. 172; *People ex rel. Taylor v. Forbes,* 143 N. Y. 219, 38 N. E. 303; *State v. Height* (Iowa) 91 N. W. 935. In pursuance of this policy of construction, it has become fully established that the prohibition against one's being compelled to be a witness against himself should not be limited to exclusion of merely oral statements against himself; that if the link in the evidence, which, under the language of Chief Justice MARSHALL, he could not be required to furnish, was to be furnished by some fact, document, or property which he had a right to hold secret, the mantle cast about him by the constitution was as much rent by requiring him to disclose

that secret fact otherwise, as by word of mouth.    One of
the latest cases, 'presenting an exhaustive and well-reasoned
opinion on the subject, by McClain, J., is *State v. Height,
supra,* where one charged with rape was required to submit
to a medical examination to ascertain the fact that he was
suffering from a venereal disease, such as the prosecuting wit-
ness found herself afflicted with a short time after the alleged
crime.    It was there held that the rule of the common law—
Iowa having no express constitutional inhibition like ours—
prohibited compulsion to disclose this fact, constituting, as
it did, a link in a chain of circumstantial evidence which
might lead to his conviction.    A similar case in principle is
*People v. McCoy,* 45 How. Pr. 216, where a woman charged
with infanticide was required to submit to a physical exam-
ination which enabled physicians to testify that she appar-
ently had recently been pregnant and delivered of a child.
This was held to be in violation of the spirit and meaning of
the constitutional inhibition declaring that no person shall
be compelled in any criminal case to be a witness against
himself.    The court said:

"They might as well have sworn the witness, and compelled
her, by threats, to testify that she had been pregnant and been
delivered of the child, as to have compelled her, by threats, to
allow them to look into her person, with the aid of a specu-
lum, to ascertain whether she had been pregnant and been
recently delivered of a child."

While, however, the constitution, in perpetuation of the
rules of the common law, must be held to protect one from
being compelled to disclose any criminatory fact, either by
words or by surrender of papers, documents, or other effects,
which, in the nature of things, he has a right to keep secret,
it cannot be held to exclude those sources of evidence which
have always been recognized as legitimate.    Because a fact
pertains to or is connected with the person of an accused, it is
not necessarily secret.    Of course, the personal appearance
of one, his obvious physical characteristics and his attire, are

things usually open to observation by others, and from time immemorial testimony by those who have observed them has been received and has been considered in no wise to invade the privacy of the person observed. How far these opportunities for observation may be coerced when one is in custody has been the subject of discussion under many aspects. That a man's head is bald is a fact ordinarily observed and known by many who come in contact with him. Does it not thereby cease to be one of those private, secret facts which it is an invasion of his right to have observed against his will? May he not, when in custody, be required to remove his hat and thus give the opportunity of observation which has commonly existed for those coming in contact with him? It seems that this must be so. There are, of course, extreme cases in both directions about which courts would hardly doubt. Those mentioned from New York and Iowa above, of medical examination, in one case to ascertain the fact of recent pregnancy and parturition, in the other of recent venereal disease, are far to the one extreme. The illustrations of the removal of the hat, or removal of a veil for opportunity to observe the face, are perhaps as extreme in the other direction. In line, however, with such illustrations, are the many cases where an accused present in court has been held properly required to stand up to facilitate a witness in identifying him, or to enable observation of some obvious fact in his appearance. *State v. Johnson,* 67 N. C. 55; *People v. Gardner,* 144 N. Y. 119, 38 N. E. 1003; *Comm. v. Whitman,* 121 Mass. 361; *People v. Goldenson,* 76 Cal. 328, 19 Pac. 161; *Blackwell v. State,* 67 Ga. 76; *Rex v. Watson,* (1817) 2 Starkie, 116; and *Rex v. Deering,* 5 Car. & P. 165. In *State v. Garrett,* 71 N. C. 85, one charged with murder had said that the deceased was accidentally burned to death, and that she had burned her hand in trying to put the fire out. Her hand being wrapped up, she was compelled, against her protest, by the coroner, to unwrap the hand, and evidence that

it showed no signs of burning was held admissible on the trial. In *State v. Prudhomme,* 25 La. Ann. 522, it was held permissible to require accused to take his feet from under a chair, thus enabling a witness who had seen tracks of the mur-derer to state how the prisoner's feet corresponded therewith. The most extreme case in this direction is *State v. Ah Chuey,* 14 Nev. 79, where, the identity of accused being disputed, he was required to bare his arm to disclose certain tattooing. Whether the act itself were permissible or not, the reasoning of the court sustaining it is so complete a departure from the principles laid down by the general line of authorities that we should not be inclined to accept it. The court, in order to distinguish such cases as the infanticide case in 45 How. Pr. 216, intimates that any examination or exposure of the body which is indecent might be excluded on that ground, independently of the constitution. A more justifiable test of the limits of this field of inspection of the person of an ac-cused is suggested in *State v. Nordstrom,* 7 Wash. 506, 510, 35 Pac. 382, where it is said:

"It is generally held that an accused person cannot be com-pelled to exhibit those portions of his body which are usually covered, for the purpose of his identification, or in other ways affording evidence against him."

A distinction has been marked in some cases between en-forced inspection by another to enable the latter to testify, and the actual exhibition of the accused to the jury as sub-stantive proof of some fact—a distinction only remotely relevant here. See *State v. Jacobs,* 5 Jones Law (N. C.) 259; *State v. Garrett,* 71 N. C. 85; and note to *People v. Gardner,* 28 L. R. A. 699 (144 N. Y. 119, 38 N. E. 1003).

Another line of cases deals with a compulsory comparison of footprints, where the accused has been required, either in or out of court, to make such footprints, in order that those who had observed the vicinity of the crime might make com-parison. This was held to be a requiring of him to give tes-

timony, and therefore an invasion of his constitutional right, in *Day v. State,* 63 Ga. 667; *Stokes v. State,* 5 Baxt. (Tenn.) 619. But the exact contrary was held in *State v. Graham,* 74 N. C. 646; *Walker v. State,* 7 Tex. App. 245.

There is also another line of cases which it seems to us have a most direct bearing upon the situation. These relate to the use as criminating evidence of those articles which are found upon the person of the accused when arrested; being taken from him, of course, by virtue of the physical power which the arresting and incarcerating officers have over him, and therefore presumptively without his consent. Those cases are very numerous, and but few need be cited to illustrate the principle. In *Dozier v. State,* 107 Ga. 708, 33 S. E. 418, the fact that the sheriff found and took from the pocket of the prisoner a pistol was allowed to be proved as evidence on a charge of carrying concealed weapons. In *Bryant v. State,* 18 Tex. App. 107, one accused of murder was required to remove his overshirt, whereby the sheriff was enabled to discover blood spots upon his undershirt, of which fact he gave testimony and produced the undershirt in evidence before the jury. The holding that it was admissible was perhaps *obiter,* inasmuch as it was first held that proper objection had not been reserved. In *State v. Nordstrom,* 7 Wash. 506, 35 Pac. 382, boots and socks taken off from the prisoner at the time of his arrest were held admissible, the court saying:

"It has never been held that personal effects of every kind could not be taken from the person of a prisoner and used upon his trial for what they may be worth as criminating evidence."

In *People v. Connor,* 9 N. Y. Supp. 674, 679, an arresting officer was permitted to testify to condition of the underclothing of one accused of rape, ascertained by police search of his person on arrest. In *State v. Graham,* 74 N. C. 646, it was said: "An officer who arrests a prisoner has a right to take any property which he has about him which is connected with

the crime charged, or which may be required as evidence;" basing the statement on several English authorities. The same idea is reiterated in *People v. Gardner, supra;* and in *State v. Height* (Iowa) 91 N. W. 935, it is said:

"There are, of course, limitations as to immunity from search and seizure for the purpose of securing evidence of crime. It is well settled that, when one charged with an offense is arrested, the officers may, without further legal procedure, seize weapons with which the crime has been committed, property which has been obtained by means of a criminal act, or articles which may give a clue to the commission of the crime or identification of the criminal. . . . And the officer making such search may testify as to any facts, even though criminating, which were discovered thereby."

In Best on Evidence, § 201, numerous instances are given of the use of what is called "real" evidence, resulting from search of the person of the accused after his arrest; as by comparing a portion of a knife blade left in a burglarized window with a knife in the pocket of the accused; comparison of the paper wadding found in a wound with a torn printed paper in the prisoner's pocket.

It seems to us plain, without deciding the exact location of the dividing line between what is proper and what is improper in this very broad field, that the evidence now complained of falls clearly and safely within the principle of the cases last referred to. Not only in this country ever since the adoption of the constitution, but in England long before, it has been usual, upon the arrest of the prisoner, to subject him to a search. This is done as well for purpose of safety of custody and incarceration, to ascertain the presence of weapons or implements of escape, as for purposes of discovery. It had become so entirely well established as not an infringement of legitimate personal rights before our constitution was adopted, and has been so universally treated since, that it must be assumed not to have been within the class of *unreasonable* searches and seizures which the fourth amend-

ment to the constitution of the United States prohibited, in language later adopted into our own constitution. The fruits of such customary and not unreasonable search fall within the principle enunciated in *State v. Nordstrom, supra* (7 Wash. 506), and which we adopt as an approximate guide upon such subject, namely, that such portions of the person or attire of an accused as are customarily open to observation are legitimate sources from which witnesses may give testimony of the result of such observation, and that it is not a forcing of a prisoner to be a witness against himself to require him to give to witnesses, in court or out of court, an opportunity to make such observation. Within this rule it would have been entirely competent for the sheriff or any one else to have noticed the shoes of the plaintiff in error, and to have testified, so far as he was able, to a comparison between them and the footprints near the place of the assault. Now, if, without breach of the prohibition against unreasonable searches and seizures, these shoes might come into the possession of the sheriff or any one else, how can it be said that the constitutional rights are any more invaded because the witness uses them at the place of the crime to make a careful and useful comparison, and testifies to the result? The only difference is that the evidence thus becomes much more certain and valuable. We are satisfied that the required surrender of defendant's shoe did not constitute any unreasonable search or seizure, and that the form and outlines of one's shoe are not so naturally secret that the enforcing opportunity to observe them requires of the accused a disclosure of a fact which he has any right to withhold, so as to constitute any infringement of the constitutional command that he be not compelled to be a witness against himself; hence that the assignment of error in question cannot be sustained.

2. A further error is assigned upon the exclusion of the testimony of defendant's mother, who, having testified that she was in bed when he came in, and having been asked what

time it was, and it appearing that she did not herself look at
any timepiece, was asked: "What other conversation did you
have with your son?" to which objection was sustained; and
was then asked: "What time did he come home?" answered:
"I asked him what time it was." (Objected to, and objection
sustained.) Clearly no error existed in these rulings. It
was an attempt to prove the time of defendant's arrival at
home by his own unsworn statement to some one else; hearsay
and inadmissible.

Another criticism is made upon the overruling of objection
to the question, "You have been arrested before?" answered:
"Yes, sir." This was followed at once by the further ques-
tion, "You were convicted in this court on the 13th day of
May last for drunkenness?" to which he answered: "Yes,
sir." While, of course, the inquiry whether defendant had
been previously arrested, if it stood alone, was error, there
could be nothing prejudicial in the establishment of that fact
in immediate connection with the fact of his conviction,
which itself was admissible as bearing upon his credibility.
The fact of conviction, of course, carries with it the unavoid-
able inference of previous arrest, and, while it was needless
to preface proof of his conviction by proof of the arrest, he
could not be prejudiced thereby.

Complaint is made, in this same connection, of an instruc-
tion to the effect that the testimony as to the prior conviction
was admitted for the sole purpose of impeaching or discredit-
ing the credibility of the defendant as a witness in his own
behalf, and was to be considered for no other purpose. We
do not very clearly understand the grounds of objection. The
instruction is a correct statement of the rules of law under
which such testimony was admitted, and was for the benefit
of the defendant, cautioning the jury that such fact must not
be taken into account as bearing upon the probability of his
having committed the offense for which he was being tried.
Counsel seems to argue that some milder form of expression

ought to have been adopted, because the prior offense was only intoxication instead of some more serious crime. He does not suggest what modification could have been made, and he requested no qualification of the charge. The proposition that a previous conviction of an offense may be shown and considered as affecting the credibility of the defendant when he testifies as a witness in his own behalf is fully sanctioned by all the authorities, and none cited indicate that the vehemence with which that proposition should be expressed to the jury is to be varied according to the gravity of the previous offense. We cannot consider that there was any error in giving this correct rule of law to the jury.

3. The assignment of error presumably raising the question of the sufficiency of the evidence to support the verdict cannot be sustained. The evidence of the prosecuting witness as to the identity of defendant with the person committing the assault was positive, and, if believed by the jury, sufficient to support their conclusion that it was he who committed the act, notwithstanding evidence from himself that he was then in another part of the town and therefore could not have been the person. The conduct described by the complaining witness was certainly sufficient to justify the belief in the criminal intent charged in the information. We shall content ourselves with this statement, without going into its unsavory details.

We find no error in the record which can require reversal of the conviction.

*By the Court.*—Judgment affirmed.