THE STATE OF CONNECTICUT *vs.* PATRICK W. REYNOLDS.

Third Judicial District, New Haven, June Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

Upon the trial of the accused for keeping liquor with intent to sell, the State offered in evidence a bottle of whiskey which had been seized without a search warrant by a police officer who, upon entering the saloon conducted by the accused and furnished in a manner suitable for dispensing alcoholic liquors and finding no one present but a customer who stood drinking at the bar, waited for the accused who soon appeared without coat or hat at a rear door which led

to his dwelling-rooms on the second floor; whereupon the officer searched his person and, having discovered the bottle in the rear pocket of his trousers, placed him under arrest. The accused objected to the evidence and after its admission requested the trial judge to instruct the jury that it should be disregarded upon the ground that it was obtained by an unreasonable search and seizure (Const. of Conn., Art. I, § 8) and upon the further ground that he was thereby compelled to give evidence against himself (Const. of Conn., Art. I, § 9). *Held:*—

1. That the search and seizure were not unreasonable since the physical surroundings and the conduct of the accused, coupled with common knowledge and experience of the means and methods adopted by violators of the liquor laws, were such as to justify the officer in reasonably believing that a crime was about to be committed.

2. That, for the same reasons, the arrest without a warrant was lawful under § 223 of the General Statutes.

3. That the mere fact that the search preceded the arrest by an appreciable moment of time was too technical an objection to affect its legality.

4. That, even assuming that the accused had been subjected to an unreasonable search and seizure, as forbidden by the Constitution, the evidence was admissible because (a) the bottle alone had no probative force and only became material evidence when characterized by all the circumstances surrounding the seizure and arrest; (b) the wrongful search and the admission of the evidence were distinct transactions without legal connection; (c) there is no identity between compelling a witness to testify against himself and using in evidence material taken from him by force or fraud; (d) the wrong if done is to the rights of the accused and to the cause of justice and can be properly remedied only in a direct proceeding; (e) the regular course of a criminal trial should not be delayed by an inquiry into the legality of the method of obtaining evidence which may be determinative of the guilt of the accused; (f) sound public policy forbids the exclusion of evidence, otherwise admissible, though illegally obtained, and requires that the rights of society to punish and prevent crime shall not be subordinated to the protection of the rights of the criminal through meticulous construction of constitutional provisions.

5. That the Fourth and Fifth Amendments to the Constitution of the United States which correspond with §§ 8 and 9 of Article I of the Connecticut Constitution apply only to the Federal government and its agencies and, therefore, the decisions of the United States Supreme Court with reference thereto are not binding upon this court.

6. That under our practice, the Superior Court will not entertain a petition to return to an accused property which has been taken from him by an unreasonable search and seizure.

7. That, under such circumstances, the only remedy of the accused is a civil action for the trespass, though, possibly, the officer would be guilty of a contempt.

Argued June 4th—decided July 28th, 1924.

INFORMATION in two counts charging a violation of the liquor law, brought to the Criminal Court of Common Pleas in New Haven County and tried to the jury before *Booth, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*Samuel E. Hoyt,* for the appellant (the accused).

*Edwin S. Pickett,* Prosecuting Attorney, for the appellee (the State).

WHEELER, C. J. The plaintiff offered evidence to prove: That on September 17th, 1923, the accused conducted a saloon in New Haven, and at about 9:30 p. m. of this day, two police officers of New Haven saw the accused inside the saloon and behind the bar. Shortly thereafter the officers entered the saloon through two swinging doors, being the front door and unlocked, and found therein a bar, a back bar, a bench, chairs, tables and various bar glasses. When the officers entered the accused was not in the saloon, but another man stood near one end of the bar with his feet upon the rail, drinking beer from a glass. In the rear of the saloon was a doorway leading to a stairway which in turn led to the living apartment on the second floor, in which the accused and his family lived. The officers waited a few moments in the saloon near the rear door when the accused came down the stairway and entered the saloon by the rear door, he not having on hat or coat. One of the officers went up to him, felt of the pockets in his clothing, and in the rear pocket of his trousers

found a bottle and took it from his pocket and placed him under arrest. The contents of the bottle were later analyzed and found to be whiskey and to contain thirty and sixty one-hundredths per cent alcohol by volume. The accused at this time made no statement concerning the bottle of liquor, but trembled and turned pale. The officers had no search warrant directing them to search the premises or the apartments upstairs or the person of the accused. The liquor taken was in fact owned and kept by the accused, and so kept and owned by him with intent to sell the same at the time the officer took it.

The accused offered evidence to prove and claimed to have proved, that he had not for a long time conducted a saloon, but a restaurant on the first floor of this building; that on this day he obtained the bottle of whiskey from his wife, who had procured it for the purpose of presenting it to her brother, who was ill in a hospital; that he did not purchase it, nor intend to sell it, but intended to take it to the hospital for his brother-in-law; that Carter, the man found by the officers in the saloon, was not drinking alcoholic drink, and intended to accompany the accused to the hospital, and that he had lived in the home of the accused for fourteen months; that the accused himself had entered the barroom for the purpose of getting his coat and hat, and that the officer took the bottle of whiskey from his pocket without his consent.

Errors which we shall consider concern certain rulings on the admission of evidence and requests to charge. Upon the trial the State offered, and the court admitted, evidence tending to prove that the officer felt in the pocket of the accused and took from it a bottle, which on analysis was found to contain whiskey. To the admission of all of this evidence the accused duly objected and excepted.

The accused requested the court to charge: "I further ·charge you that if you find that any of the evidence presented in this case was· obtained from the accused in violation of his rights to be secure in his person and effects from search without a legal search warrant properly authorized, then in that event such evidence ·if presented before you is compelling the accused ·to furnish evidence against himself in this criminal case under the meaning of the Constitution of this State ànd such evidence should be by you disregarded and given no value whatsoever in arriving at your verdict." And also: "I therefore charge you that the admitted facts in this case as to how the police officer obtained the possession of the liquor involved in the case was an unreasonable seizure from the person of the defendant, and unlawfully violated the defendant's rights in his person and in his possession, and that this conduct on the part of the police officer deprived the defendant of the protection of his constitutional guaranty, and, therefore, the evidence should be disregarded and the accused acquitted in this case."

The record does not state the ground of the objection to this evidence, but we think it fair to assume that the ground was the same as that contained in these requests. It is obvious that if the evidence was properly admitted the requests to charge should have been refused. Evidence properly admitted cannot be legally disregarded by the jury. The question which is involved in the rulings on evidence is whether the evidence was inadmissible because the search of the accused's person, and the seizure of the bottle of whiskey, were unreasonable and in violation of § 8 of Article First of the State Constitution, and compelled the accused to give evidence against himself in violation of § 9 of Article First of the State Constitution. The search of the person of the accused was unreasonable if unlaw-

ful, and it was unlawful unless the accused was taken or apprehended in the act of violating the law, or on the speedy information of others. Under such conditions he could have been placed under arrest under § 223 of the General Statutes, without warrant. A crime was about to be committed in the presence of the officer if the circumstances then observed by him, taken in connection with those before observed by him when weighed in the light of common knowledge, gave him probable reason or ground to believe that such a crime was being, or was about to be, committed. *Ex parte Morrill* (C. C. A.), 35 Fed. 261, 267; *Agnello* v. *United States* (C. C. A.), 290 Fed. 671, 679; *State* v. *Campbell*, 182 N. Car. 911, 915, 110 S. E. 86; *State* v. *Simmons*, 183 N. Car. 684, 110 S. E. 591.

The jury might have found as follows: Before the officers entered the saloon they saw within the surroundings and indicia of a saloon where alcoholic beverages were dispensed. The unlocked door was an invitation to enter; within they found the proprietor, the accused, had left the saloon by its rear door. One of the officers stepped to the rear door and waited the return of the proprietor. In a moment he came down the rear stairs leading from his apartment and entered. At once the officer felt his pockets from the outside, and then took from his rear trousers pocket a bottle of whiskey. It is apparent, if this was the conduct of the officer, that he had diagnosed the situation correctly. Did he, before he put his hand in the accused's pocket, have reasonable ground to believe that the accused had gone to his apartment for liquor which he proposed selling? If the facts were as claimed by the State, we think he did, and that he was justified in securing the bottle of whiskey before he placed the accused under arrest. In reality both acts were practically simultaneous, and if the general rule had re-

quired the arrest before the search we should think it far too technical an application of the rule to hold that this search was unlawful because it preceded the arrest by an appreciable moment of time. We reached a like conclusion in *Ely* v. *Bugbee*, 90 Conn. 584, 590, 98 Atl. 121, where property was seized without warrant, for a violation of the fish laws, on the day following the commission of the offense, and at or about the same time that the plaintiff was arrested for this offense upon a warrant issued according to law. We held, in that case: "It must be conceded that property may lawfully be seized without warrant if taken by the officer at the very time when it is being used in violation of the fish and game laws, or upon the speedy information of others; and without attempting any general definition of the powers of fish and game wardens under other statutes, we think that a seizure without warrant of this property on the day after its use, in connection with the arrest of the owner for the commission of the offense of using it in violation of the fish laws, is not an unreasonable seizure when the fact is admitted that the property was so used." Cases in which the officers were justified in entertaining a reasonable belief that the accused was committing or about to commit a crime under the Volstead Act and searching without warrant are: *Herine* v. *United States* (C. C. A.), 276 Fed. 806; *Vachina* v. *United States* (C. C. A.), 283 Fed. 35; *Kathriner* v. *United States* (C. C. A.), 276 Fed. 808; *United States* v. *Hilsinger*, 284 Fed. 585.

The many cases of violations of the National Prohibition Act, and of State statutes in its aid, disclose the length to which these violators go in this traffic. Every form of ingenuity of which the mind is capable seems to have been used. Peace officers charged with the enforcement of these acts are familiar with these devices and recognize them as by instinct, as this officer

may have the purpose of this proprietor. Unless the facts show clearly that the officer has made an unreasonable search, the courts ought not to so hold; the officer's conduct should be judged in the light of the circumstances, with a due appreciation of the character of the traffic he is seeking to prevent, of the exceeding difficulty of his task, of the presumption that he has done his duty, and of the probability that in this class of cases, in this section of the country, he has not exceeded the bounds of his duty. The broad holdings of the cases which would hold, upon the facts in the instant case, the search to have been unreasonable and hence unlawful, are in conflict with the principle of our own case of *Ely* v. *Bugbee, supra*. Cases which present the contrary view are: *Youman* v. *Commonwealth*, 189 Ky. 152, 160, 224 S. W. 860; *State* v. *Wills*, 91 W. Va. 659, 669, 114 S. E. 261; *Thornton* v. *State*, 117 Wis. 338, 346, 93 N. W. 1107. The facts as detailed in the offers of proof made by each party do not represent a case of an unreasonable search in violation of § 8 of Article First.

If the search of the person of the accused had been a trespass and unreasonable and in violation of § 8 of Article First, the offer in evidence of the bottle of whiskey could not have been excluded. We so held in *State* v. *Griswold*, 67 Conn. 290, 306, 34 Atl. 1046, in these words: "And even if it had been taken from the possession of the defendant by a trespass, as he claims, that would have been no valid objection to its admissibility." In *State* v. *Magnano*, 97 Conn. 543, 546, 117 Atl. 550, we reiterate this principle in a prosecution for a like offense to that of the instant case, where the officer entered the accused's premises lawfully and there discovered apparatus for distilling liquor, apparently having been in recent operation. "The seizure and possession," we say, "of these articles being lawful,

they were unquestionably admissible in evidence.  If
possession had been obtained unlawfully, they would
still have been admissible."   The great weight of au-
thority in this country and in Great Britain support
this position.   We cite a few of the leading cases and
authorities, together with a leading text-book and some
of the notes to annotated cases, giving very full citation
of the decided cases.   *Commonwealth* v. *Dana*, 43 Mass.
(2 Metc.) 329; *State* v. *Flynn*, 36 N. H. 64; *Williams*
v. *State*, 100 Ga. 511, 520, 28 S. E. 624, 627; *Gindrat*
v. *The People*, 138 Ill. 103, 27 N. E. 1085; *People* v.
*Mayen*, 188 Cal. 237, 205 Pac. 435, 437; 4 Wigmore on
Evidence (2d Ed.) §§ 2183, 2184, and cases cited;
Note to *State* v. *Turner*, 136 Amer. St. Rep. 135–153 (82
Kan. 787, 109 Pac. 654); Notes in 59 L. R. A. 465; L.
R. A. 1915B, 834; L. R. A. 1916E, 714; 15 Ann. Cas.
1205; Ann. Cas. 1915C, 1182.

The principal reasons upon which this rule of evi-
dence is founded are these: 1. In *State* v. *Griswold*,
67 Conn. 290, 34 Atl. 1046, immediately after the
arrest of the accused, police officers searched, without
a warrant, the place of business of the accused and
took therefrom some photographs which were admitted
in evidence over the accused's objection that they had
been taken in violation of § 8 and § 9 of Article First of
our State Constitution.   We held that neither section
was applicable to the question of the admissibility of
this evidence, saying (p. 305): "Both the sections cited
by the defendant, have reference to the security of the
citizen as to his possessions and as to his person.   The
eighth section forbids the legislature to enact any stat-
ute, and the courts from passing any rule, which would
authorize any unreasonable search or seizure of the
goods of a citizen.   And the ninth forbids any legislation
or rule of court which would compel any one accused of
a crime to give evidence against himself.   In this respect

neither of the sections so cited have any application to this case. The act of the police was not directed, nor is it sought to be justified, by any statute or by any rule of any court. . . . Indeed the defendant hardly claims that the eighth section [of Article I] alone affects his objection. But he does claim that a search or a seizure may be so made, that the production in evidence of any of his goods or possessions taken, is to compel the accused to furnish evidence against himself; and in that way to become a violation of the ninth section of the first article of the Constitution. . . . The package here shown to the jury was an envelope with certain inclosures,—a simple piece of the defendant's personal property; having of itself no voice or meaning so far as his guilt or innocence was concerned, any more than if it had been a lump of clay, or a block of senseless wood. . . . It was his conduct in respect to this piece of property . . . which was incriminating. . . . We think no constitutional provision was violated by permitting the jury to see the envelope." The same suggestions and holding are applicable to the bottle of whiskey in the instant case. Taken in connection with the saloon, its equipment, the customer, the conduct of the accused, and the analysis, it became material evidence; alone, it would have lacked probative force. *Williams* v. *State*, 100 Ga. 511, 519, 28 S. E. 624.

2. The trespass committed in making the search, and the use of the evidence discovered by the search, are two wholly unconnected transactions. The violation of the constitutional rights of the accused occurred, if at all, when the search was made. The admission in evidence of the fruits of the search was no part of the wrong committed in making the search. *People* v. *Mayen*, 188 Cal. 237, 205 Pac. 435.

3. The accused was not compelled by the court to

give evidence against himself. All that the court did was to admit in evidence an article taken from the accused, together with a statement of the circumstances surrounding the taking. It was all admissible evidence unless it should have been excluded until the court had ascertained whether it had been obtained illegally, and thereupon had permanently excluded it. Of a similar ruling the court, in *Williams* v. *State, supra,* said (p. 518): "While here, and in the other cases cited, the question of illegality was raised collaterally, and the courts exercised no compulsion whatever to procure evidence from the defendants, and neither made orders nor issued process authorizing or purporting to authorize a search of premises or a seizure of property or papers, but simply admitted evidence which was offered, without stopping to inquire whether possession of it had been obtained lawfully or unlawfully." And *State* v. *Flynn,* 36 N. H. 64, 71, thus states this reason: "The information thus acquired is not the admission of the party, nor evidence given by him, in any sense. The party has in his power certain mute witnesses, as they may be called, which he endeavors to keep out of sight, so that they may not disclose the facts which he is desirous to conceal. By force or fraud access is gained to them and they are examined to see what evidence they bear. That evidence is theirs, not their owner's." See also *Shields* v. *State,* 104 Ala. 35, 16 So. 85. To hold otherwise is to find, as *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, forcibly expresses it, an identity between compelling a witness to speak and using in evidence material taken from him by force or fraud. To us there is no such similitude.

4. The wrong done by the taking is to the rights of the accused and to the cause of justice; neither can be properly protected save by a remedy in a direct proceeding. In a collateral proceeding the court is without

power to improvise a remedy to enforce the rights of either the accused or the State for a wrong not before the court.

5. To stop the trial of a criminal cause upon an objection to the introduction of evidence, otherwise admissible, because illegally obtained, in order to determine whether the evidence was so obtained in violation of the accused's constitutional rights, delays the regular course of the trial to try an issue foreign to the cause on trial, and if the issue be found in favor of the accused the evidence excluded may be determinative of the guilt of the accused. Wigmore on Evidence (2d Ed.) Vol. 4, § 2183.

6. Sound public policy forbids the exclusion of evidence, otherwise admissible, though illegally obtained. When evidence tending to prove guilt is before a court the public interest requires that it be admitted. It ought not to be excluded upon the theory that individual rights under these constitutional guaranties are above the right of the community to protection from crime. The complexities and conveniences of modern life make increasingly difficult the detection of crime. The burden ought not to be added to by giving to our constitutional guaranties a construction at variance with that which has prevailed for over a century at least. The cases in which, in recent years, some of the courts have either excluded this class of evidence or ordered articles taken from the accused returned to him, have been in prosecutions for violations of the laws against policy, gambling, fraud and intoxicating liquors. The next case may be one of murder, and the prosecutor be compelled by the ruling of the court to return to the accused the certain evidence of his guilt and the accused go free,—his constitutional rights against search protected above the right of society against his crime. No such construction of §§ 8 and 9

of Article First of our Constitution has been needed
to give to every accused a fair trial under our law;
more than that, he ought not to have. Not only have
we refused to exclude evidence of this character, but
in *State* v. *Magnano*, 97 Conn. 547, 117 Atl. 550, we
state the rule of this jurisdiction on a petition for the
return of personal property to the accused, and the
principle upon which our rule rests: "The petition to
the Superior Court to order this personal property to
be returned to the accused was a procedure not known
to the practice of this State. . . . But our courts have
followed the general rule, . . . that public officers will
not be compelled to return to its owner any property
which is being held in good faith to be used as evidence
in a trial in any court."

Counsel for the accused insistently direct our at-
tention to recent rulings of the Supreme Court of the
United States construing and applying the Fourth and
Fifth Amendments to the Constitution of the United
States, which correspond closely with § 8 and § 9 of
Article First of our Constitution, in situations such as
that before us. Federal holdings only apply to the
Federal government and its agencies. *Weeks* v. *State*,
232 U. S. 383, 34 Sup. Ct. 341; *State* v. *Magnano*, 97
Conn. 543, 546, 117 Atl. 550. While this is true, the
analogy of these rulings are of deepest concern to us,
and because of that and of our high regard for that
court, we have re-examined the question involved with
the aid of, and in the light of, these decisions. We
find we cannot concur in the doctrine last announced
by that court without overruling our own pronounce-
ment in the two cases to which we have already re-
ferred, the last of which was decided in July, 1922,
and, what is of more weight with us, without adopting
a doctrine at variance with our settled opinion, and
approving reasoning which seems to us fallacious, and

reaching a result which we conceive to be against the peace and welfare of the community. We shall not attempt an analysis or detailed criticism of these decisions. Until *Boyd* v. *United States*, 116 U. S. 616, 6 Sup. Ct. 524, the decisions of the Federal and State courts were, with few exceptions, in harmony. In that case the court was thought to have expressed the opinion, though obiter, that evidence of the character of that in question should be excluded. About ten years later, in *Adams* v. *New York*, 192 U. S. 585, 24 Sup. Ct. 372, the court affirmed the judgment of the New York court and again placed the Supreme Court of the United States in line with the almost universal authority, including our own case of *State* v. *Griswold, supra.* In *Weeks* v. *United States,* 232 U. S. 383, 34 Sup. Ct. 341, the court modified the ruling of *Adams* v. *United States* and held that the Federal courts cannot, as against a seasonable application before trial for their return, in a criminal prosecution, retain letters of an accused seized in his house without a warrant. *Gouled* v. *United States*, 255 U. S. 298, 41 Sup. Ct. 261, and *Amos* v. *United States*, 255 U. S. 313, 41 Sup. Ct. 266, in effect hold that objection to evidence obtained by search without a warrant may be made when such evidence is offered, or the accused may move for its return at any time before or during trial, and that the objection to the evidence will be sustained, or the motion for the return granted, when it appears that the seizure was through a violation of the Fourth and Fifth Amendments. If these later cases be the settled view of the court, we cannot, for the reasons in part stated, concur, nor can we, following by analogy *Gouled* v. *United States,* extend the protection of the ninth section of Article First of our Constitution against this class of evidence. We perhaps should note that quite a few of the State courts have accepted as their

own the Federal viewpoint. Among these cases are: *Youman* v. *Commonwealth*, 189 Ky. 152, 224 S. W. 860; *Tucker* v. *State*, 128 Miss. 211, 90 So. 845; *Hughes* v. *State*, 145 Tenn. 544, 238 S. W. 588; *People* v. *Marxhausen*, 204 Mich. 559, 171 N. W. 557; *State* v. *Wills*, 91 W. Va. 659, 669, 114 S. E. 261.

If the question recurs, where is the accused's remedy, the answer must be, by a civil action, the only form of remedy known for the protection of the individual against a trespass. It may be that the officer would be guilty of a contempt. If violations of these constitutional rights shall multiply, undoubtedly the General Assembly can provide for a penalty for subsequent violations. A penalty upon an officer for an illegal search made without reasonable ground would furnish adequate protection against such a public wrong. The creation of such a crime must be left to the legislative department of government. No such crime exists under our common law.

There is no error.

In this opinion the other judges concurred.