### STATE OF CONNECTICUT *v.* ROY F. DARWIN

SUPERIOR COURT      TOLLAND COUNTY      FILE NO. 2508

Memorandum filed February 18, 1964

*Joel H. Reed II,* state's attorney, and *Etalo G. Gnutti,* special state's attorney, for the state.

*Marte, Shea & Keith,* of Manchester, for the defendant.

LOISELLE, J. On December 6, 1963, at about 9:30 a.m., the defendant was arrested by state police troopers, under a coroner's warrant, at his place of employment, the plant of the United Aircraft Corporation in East Hartford, Connecticut. The defendant was then taken to his home in Andover in a state police cruiser. When he arrived, there were about fifteen state troopers at his home. The coroner for Tolland County arrived a short time later. He went to the cruiser where the defendant was seated and told him that by virtue of his office as coroner he was about to search the defendant's home. The defendant told both the coroner and Major Rome, of the state police, who had accompanied the defendant from East Hartford in the state police cruiser, that the door of his home was open and warned them to beware of the dog.

When the coroner told the defendant that he intended to search his home he did not ask permission. But he indicated to the defendant that he was going to search it whether or not permission was granted. The coroner intended to, and in fact did, enter the defendant's home by virtue of the power authorized in General Statutes § 6-70, as amended by § 4 of Public Acts 1963, No. 642. The coroner authorized the state troopers to aid him in the search of the defendant's premises and, with the state troopers there in attendance, entered the defendant's home and made a thorough search for clothing of the defendant which might reveal blood or seminal stains. About forty-five minutes after he had arrived at the defendant's home and when he felt that the search was well under way, the coroner left the premises, leaving the state troopers on the premises to continue the search to conclusion.

On the same morning of December 6, prior to the arrival of the state troopers and her husband, the defendant's wife had left their home to meet her daughter at Bradley Field. When she returned home that day at about 1:30 p.m., she found from twelve to fifteen state troopers on the premises. She asked them whether they had a search warrant. One of them answered affirmatively. But no one exhibited a search warrant. One of the state troopers told her that they had taken some articles from the home and that they would return later in the afternoon to give her a list of the articles taken. In addition to the articles taken from the home, the state troopers took the Plymouth station wagon that Mrs. Darwin had driven that day. The state troopers left about ten to fifteen minutes after Mrs. Darwin had returned home. The Darwin home was in an unsettled condition when the state troopers left. The attic was disarranged; every closet had been searched; the beds appeared to have been re-made; the living room and the bookcases were disarranged; and it appeared as though someone had eaten lunch in the kitchen. Later that afternoon the state police gave Mrs. Darwin a list, written on a state police form, of the articles taken from the home (exhibit 1), and they also returned the Plymouth and the Chevrolet which the defendant had driven to his work in East Hartford that morning.

On December 7, at about 6:45 p.m., the coroner, accompanied by a sergeant of the state police and a state trooper, again appeared at the Darwin home. Mrs. Darwin asked them if they had a search warrant. She was told that none was necessary as they were going to search the home by virtue of the coroner's presence and his statutory power to search it. In this instance the state troopers were again present at the request of the coroner, who authorized them to act as his agents. One of the

state troopers went into the cellar. Thereafter, Mrs. Darwin was asked for the keys to the Chevrolet, which she gave to them. The state troopers then removed two battery-powered lanterns, one from the Chevrolet and one from the Plymouth, and also a phillips screwdriver from the rear of the Plymouth. The state troopers then left the premises, taking with them these articles and also the Chevrolet. The coroner had left the premises before the state troopers took the above-mentioned articles and the Chevrolet.

The state claims that the defendant's failure to protest on the morning of December 6 after he was told by the coroner that a search was to be made, his telling the coroner that the door was open and his warning about the dog implied in fact that the defendant consented to the search. This claim is untenable in view of the circumstances then existing, and especially in view of the coroner's statement to the defendant that he was going to search the home by authority of his coroner's office. It cannot be found that the defendant consented to the search of his premises on December 6, 1963. *State v. Hanna,* 150 Conn. 457, 470 (1963); *State v. Collins,* 150 Conn. 488, 494 (1963). Neither can such consent be found for the search and seizure on December 7, 1963.

It was also mentioned in argument that the search might be considered incidental to the defendant's arrest in East Hartford. The short answer to this is that the coroner intended to, and did, make the search of the defendant's home on December 6, 1963, by virtue of his claimed powers under General Statutes § 6-70. The search on December 7, of course, is not even claimed to be an incident to the arrest. Indeed, it could not be, by any argument, under the circumstances then existing.

The sole remaining claim to justification for the warrantless search of the defendant's home and premises on December 6 and 7 and the seizure of the articles and automobile is the authority recited in General Statutes § 6-70 as amended.

This motion is brought pursuant to the provisions of No. 652, § 7, of the 1963 Public Acts (General Statutes § 54-33f), which adds to our trial procedure the use of motions to suppress.

Amendments IV and XIV, § 1, to the federal constitution, and article first, § 8, of the Connecticut constitution, forbid unreasonable searches and seizures. General Statutes § 6-70, as amended, states that, "[f]or the purpose of securing evidence, the coroner may enter any and all places in his county." The coroner claims that by virtue of this language he had the right to search the defendant's home and, also, to authorize the state police, as his agents, to search it without a warrant. The state claims that since the enactment in 1883 of the predecessor of § 6-70; Public Acts 1883, c. 118, § 14; Rev. 1888, § 2016; the authority of the coroner to enter without a search warrant any and all places in his county for the purposes of securing evidence has not been challenged. At least one reason why such power was never challenged is that, prior to the decision in *Mapp* v. *Ohio,* 367 U.S. 643 (1961), any illegality in the search and seizure of evidence was irrelevant on the question of its admissibility. *State* v. *Reynolds,* 101 Conn. 224, 235 (1924).

Obviously, the enactment of § 6-70 was to aid the coroner in the furtherance of his duties. It is certainly within the police power of this state to enact legislation to aid in the detection and apprehension of persons involved in criminal activity, and especially when a death has occurred. However, such legislation cannot be used in contravention of

private rights guaranteed by the constitution. *Snyder* v. *Newtown,* 147 Conn. 374, 389 (1960).

The constitutional guarantees do not prohibit search and seizures. They prohibit only those which are unreasonable. In passing upon the issue of reasonableness, the importance of public benefit, which the legislature had in mind, is to be balanced against the seriousness of the restriction of private rights guaranteed by the constitution. *Dederick* v. *Smith,* 88 N.H. 63, 68 (1936). Private rights may be reasonably regulated. *Buxton* v. *Ullman,* 147 Conn. 48, 54 (1959). However, if a statute is directed to a public interest but imposes serious restrictions upon guaranteed rights, the conclusion that it is unreasonable is required. The constitutional guarantees against unreasonable searches and seizures are intended for the protection of private rights only and do not interfere with investigations into matters of a public or quasi-public nature or in which the public has an interest. 47 Am. Jur. 508, Searches and Seizures, § 12; 4 Wharton, Criminal Law and Procedure § 1531.

The guarantee set out in the federal and state constitutions restricting unreasonable search and seizures is designed to prevent violations of the private security of person and property and unlawful invasions of the sanctity of the home of the individual by officers of the law. This is true even if such officers are acting under legislative or judicial sanctions. "This restriction [against unreasonable search and seizures] was intended to operate on legislative bodies so as to render ineffectual any effort to legalize what the people expressly stipulated could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition could ever be enforced; and upon the judiciary, so as to render it the duty of the

courts to denounce as unlawful every unreasonable search and seizure, whether confessedly without color of authority, or sought to be justified under the guise of legislative sanction." 4 Wharton, op. cit., § 1529, p. 132; 47 Am. Jur. 508, Searches and Seizures, § 10.

The unconstitutionality of a statute giving police, in their investigation of criminal activity, unlimited right at any time to search anyone's home and to seize evidentiary matter therein without a search warrant could hardly be questioned. The court can neither see nor reason why the coroner should stand in a position different from any law enforcement officer in his investigation of a homicide. His only office is that of inquiry. General Statutes, c. 79.

That part only of § 6-70 that attempts to empower the coroner to invade, without limitation, a private citizen's home in order to secure evidentiary matters which may be used in a criminal prosecution against the owner of the premises is found to be unreasonable and contrary to the protection given in amendments IV and XIV, § 1, to the federal constitution, and article first, § 8, of the Connecticut constitution.

The motion is granted. The court orders that the state restore the articles seized under the authority of § 6-70 from the premises of the defendant on December 6 and December 7, 1963, including the Chevrolet. The court further orders that any evidence derived from such unlawful search and seizure be suppressed as evidence in the above-entitled action.