Bergeron vs. Peyton.

Bergeron, Respondent, vs. Peyton, imp., Appellant.

*March 20 — April 6, 1900.*

*False imprisonment: Conversion of money paid by mistake: Evidence: Instructions to jury: Damages: Practice: Returning sealed verdict.*

1. One who receives from a bank, upon a check, more money than he is entitled to, and with knowledge of the facts refuses to pay it back upon demand, is guilty of larceny.

2. Arrest and detention of the person who received such overpayment, not for the purpose of taking him before a magistrate, but solely to compel and induce him to repay, was not justifiable, and constituted false imprisonment.

3. In an action for such false imprisonment it was error to permit the plaintiff to testify that he was a married man and had a family.

4. It was also error to permit the plaintiff to prove that subsequent to his arrest one of the defendants commenced a civil action against him and garnished the chief of police, who was supposed to have the money, even though the court charged the jury not to allow damages by way of punishment.

5. An instruction to the jury that they should take into consideration the question of injury to plaintiff's reputation, and assess such sum as damages as would fairly compensate him for "the injury, if any, to his reputation," *held* error, especially as the court had limited the recovery to compensatory damages, and no special damages were alleged as to any such injury.

6. An instruction that the jury should not return a verdict for a mere nominal amount; that if the plaintiff had been falsely imprisoned he was entitled to substantial damages; and that they were the judges of how much such damages should be, also *held* error.

7. A direction to the jury that if they agreed before the next morning at 9 o'clock they should seal their verdict and hand it to the officer in charge, but not to report to the court until the day after, thus skipping a day when the court was in session, is criticised. Whether it was an abuse of discretion in this case, not determined.

Appeal from a judgment of the superior court of Douglas county: Charles Smith, Judge. *Reversed.*

For the appellant there was a brief by *Ross, Dwyer & Hanitch* and *George B. Hudnall,* and oral argument by *Mr. Hudnall.*

For the respondent there was a brief by *Crownhart & Foley,* and oral argument by *W. R. Foley.*

CASSODAY, C. J.    This action was commenced May 23, 1898, against the defendant *Peyton* and one F. E. Grant to recover damages for false imprisonment, May 19, 1898. The defendant *Peyton* answered by way of admissions, denials, and counter allegations. At the close of the trial of the issues thus formed, the jury returned a special verdict to the effect: (1) That the plaintiff was imprisoned by both defendants, acting jointly, May 19, 1898; (2) that such imprisonment was by both defendants; (3) that such imprisonment began after the defendant *Peyton's* first demand for his money had been refused by the plaintiff at the bank; (5) that before the plaintiff was so imprisoned he had not formed the purpose of appropriating the overpayment to his own ·use; (6) that at the time the money was paid to the plaintiff at the bank he did not know he was getting the sixty-odd dollars; (7) that the defendants jointly engaged in the imprisonment of the plaintiff at the commencement of such imprisonment; (8) that, assuming that the plaintiff's imprisonment began shortly after he returned to the bank with the defendant Grant, they assessed his damages at $100; (10) that the purpose of the defendants in imprisoning the plaintiff was solely to compel or induce him to repay the $43 overpaid. From the judgment entered upon such verdict for $100 damages and $64 costs the defendant *Peyton* brings this appeal.

The circumstances under which the alleged arrest was made are to the effect that on the day named the plaintiff, having received from one Magloire Beaudoin a time check, payable about a month afterwards, for work performed by him, which check stated that the plaintiff's work came to $67.30, "less Camp acct. $5.20," and "less cash, $40.00," leaving the "balance due $22.10," presented the same to the appellant, *Peyton*, at his bank, known as the Superior Bank, in West Superior, to be discounted at five per cent., as had been customary; that *Peyton*, by some inadvertence failing to observe the payments made on the account and deducted

Bergeron vs. Peyton.

in the check and that the check only called for $22.10, cashed the same on the supposition that it called for $67.30, thus paying to the plaintiff about $64 instead of about $21; that the plaintiff did not then know, as the jury found, that he had received about $43 more than he was entitled to, but did discover the fact at a saloon named, four or five blocks from the bank, about half an hour after he left the bank; that, soon after, the plaintiff met the defendant Grant, who was looking for him, and who took him to the bank; that *Peyton* then demanded the repayment of the $43, which the plaintiff, who had been drinking, repeatedly refused to repay, and stated that he would keep the money; that the plaintiff was then taken by the defendant Grant, who was a police officer, to the magistrate, and subsequently he was taken to jail.

Error is assigned because the court refused to grant a nonsuit or direct a verdict in favor of the defendants. There is no claim that the defendant Grant received any process against the plaintiff, or that any process was issued against him, prior to the time when he and Grant went to the office of the municipal judge, after they had been together at the bank. The plaintiff testified to facts from which the jury were at liberty to find, as they did, that he was imprisoned at the bank. If he was so imprisoned, then such imprisonment was without process. If he was imprisoned without process, and such imprisonment was unjustifiable, then it was false imprisonment. *Murphy v. Martin,* 58 Wis. 276; *Gelzenleuchter v. Niemeyer,* 64 Wis. 321; *King v. Johnston,* 81 Wis. 578. The question recurs whether such imprisonment without process was justifiable. Manifestly, it devolved upon the defendants, if they could, to prove facts justifying such imprisonment. *Allen v. Wright,* 8 Car. & P. 522; *Michell v. State,* 12 Ark. 50; *S. C.* 54 Am. Dec. 253. It is a very singular fact — if it be a fact — that the plaintiff did not know at the time that he received from the

Bergeron vs. Peyton.

bank $43 more than he was entitled to.  But he testified that he did not, and the jury evidently believed him.  He admits, however, that he knew it before he was at the bank the second time; and that, with knowledge of that fact, he refused to pay back the money when demanded.  Such re-fusal to pay back the money was a conversion of the money. It is true that the plaintiff received the money with the con-sent of *Peyton*.  But the consent was only given by reason of a mistake on his part, which the plaintiff had discovered and admitted before he refused to pay back the money. Was such conversion of the money a crime?  This court held many years ago that a conversion by a servant to his own use of property of the master put in his charge was larceny, and that the felonious intention to so convert need not have existed in the servant's mind at the time of receiv-ing the property into his charge.  *State v. Schingen*, 20 Wis. 74.  Our statute declares, in effect, that a bailee of money or property who shall "fraudulently convert the same to his own use  .  .  .  shall be guilty of larceny."  Sec. 4415, Stats. 1898.  The same section provides that, if the prop-erty so converted shall exceed the value of $20, such bailee may be punished by imprisonment in the state prison; and another section of the statutes makes such an offense a fel-ony.  Sec. 4637.  It has been held in New York that "one who receives from another money to which he knows he is not entitled, and which he knows has been paid to him by mistake, and conceals such overpayment, appropriating the money to his own use, with intent to cheat and defraud the owner thereof, is guilty of larceny."  *Wolfstein v. People*, 6 Hun, 121.  To the same effect, *People v. Call*, 1 Denio, 120; *Hildebrand v. People*, 56 N. Y. 394; *Phelps v. People*, 72 N. Y. 334, 362; *Welsh v. People*, 17 Ill. 339; *Murphy v. People*, 104 Ill. 528; *People v. Martin*, 116 Mich. 446.

The more important question is whether the circumstances were such as to justify the imprisonment without process.

Bergeron vs. Peyton.

As held in *Allen v. Wright, supra*, it was not only incumbent on the defendants to show that the crime had been committed, " but that the circumstances of the case were such that they, or any reasonable person, acting without passion or prejudice, would fairly have suspected the plaintiff of being the person who had committed it." 8 Car. & P. 522. To the same effect, *Cahill v. Fitzgibbon*, 16 L. R. Ir. 371. It has been held in New Jersey that "a private person is justified in making an arrest where a felony has actually been committed and there is probable ground to suspect the arrested person of guilt." *Reuck v. McGregor*, 32 N. J. Law, 70. When a felony has been committed, an officer or a private individual may justify the arrest of a suspected person without a warrant, for the purpose of bringing him before an examining magistrate, if done upon proof of probable cause. *Brockway v. Crawford*, 3 Jones Law, 433. To that extent that case may be sanctioned. Under these authorities, and the facts stated, it would seem that the defendants would have been justified in arresting the plaintiff, without warrant, *for the purpose* of bringing him before the municipal court to be dealt with according to law. The difficulty in holding that the trial court should have directed a verdict for the defendants is that there is evidence tending to prove, and the jury found, that the defendants did not arrest the plaintiff for the purpose of taking him before the magistrate, but for the sole purpose of compelling and inducing him to repay to the defendant *Peyton* the $43 thus overpaid to the plaintiff. The imprisonment of the plaintiff for such a purpose was false imprisonment. In such a case "probable cause is only material in mitigation of damages." 3 Suth. Dam. (2d ed.), § 1257. The proof of malice is only permissible where punitory damages are allowable. It follows from what has been said that the trial court properly refused to direct a verdict in favor of the defendants. In other words, there is evi-

dence tending to prove that the defendants were technically guilty of false imprisonment.

Error is assigned because the court permitted the plaintiff to testify that he was a married man and had a family. Such evidence was well calculated to improperly increase the damages, and was in direct conflict with the decisions of this court. *Kreuziger v. C. & N. W. R. Co.* 73 Wis. 158; *Gores v. Graff*, 77 Wis. 181.

So we think it was error to permit the plaintiff to prove that, subsequent to the plaintiff's arrest, *Peyton* commenced a civil action against him and garnished the chief of police, who was supposed to have the money. It was certainly not the best evidence. Moreover, it tended to establish an improper measure of damages. It is true, the court charged the jury not to allow any damages by way of punishment; but the objectionable testimony was not withdrawn from the jury. *Bradley v. Cramer*, 66 Wis. 304; *Beggs v. C., W. & M. R. Co.* 75 Wis. 444; *Waterman v. C. & A. R. Co.* 82 Wis. 631, 632.

So we think it was error for the court to charge the jury that they should take into consideration the question of injury to the plaintiff's reputation, and assess such sum as would fairly compensate him for "the injury, if any, to his reputation." This is especially true where, as here, the trial court has limited the recovery to compensatory damages, and no special damages are alleged as to any such injury. 3 Suth. Dam. (2d ed.), §§ 1257, 1258.

So we think it was error for the court to charge the jury to the effect that they must not return a verdict for a mere "nominal amount,— that is, six cents, or one cent, or one dollar,— by which verdict," they "would say there had been technically a wrong done;" that if the plaintiff had been falsely imprisoned he was "entitled to substantial damages," if any; and that they were "the judges of how much that substantial damages should be." *Candrian v. Miller*, 98

Wis. 167, 168; *Guinard v. Knapp-Stout & Co. Company*, 95 Wis. 483. Thus, in an action for false imprisonment, in New York, it was held error to set aside a verdict for six cents damages. *Henderson v. McReynolds*, 38 N. Y. St. Rep. 734. So, in England, it has been held that the court properly refused a new trial where, in an action for false imprisonment, " the jury had given only one farthing damages . . . for taking the plaintiff before a magistrate upon an unfounded charge of felony, merely because a question of character was involved." *Apps v. Day*, 26 Eng. Law & Eq. 335.

Error is assigned because the court directed the jury to the effect that, if they agreed before the next morning at 9 o'clock, they should seal their verdict and hand it to the officer in charge, but not to report to the court until the day after at 9 o'clock, thus skipping a day when court was in session. The jury agreed on the evening of January 24, 1899, but, in pursuance of such instruction, did not report until the morning of January 26th. The practice of thus allowing the jury to seal their verdict and part with the same, and then separate for one or two days, is certainly not to be commended. But the trial court has a broad discretion in such matters, and we do not feel called upon to determine whether it did or did not abuse such discretion in the case at bar.

*By the Court.*— The judgment of the superior court of Douglas county is reversed, and the cause is remanded for a new trial.