GREEN LAKE COUNTY, Respondent, vs. DOMES, Appellant.

*March 16—May 1, 1945.*

For the appellant there was a brief by *Lueck, Skupniewitz & Lueck* of Beaver Dam, and oral argument by *A. W. Lueck*.

For the respondent there was a brief by *J. L. McMonigal,* district attorney of Green Lake county, attorney, and the *Attorney General* and *William A. Platz,* assistant attorney general, of counsel, and oral argument by *Mr. Platz.*

FRITZ, J.   Defendant contends the trial court erred in admitting, over defendant's objections, and in subsequently denying his motion to strike out testimony of Dr. Schroeder as to facts which he observed in making a physical examination of defendant, and as to his conclusion that defendant was then under the influence of intoxicating liquor.   Defendant contends he did not consent, but was compelled to submit to the examination, and that therefore the examination by Dr. Schroeder and the admission of his testimony based thereon constituted an invasion of defendant's constitutional rights under the provision in sec. 8, art. I, Wis. Const., that—

"No person shall be held to answer for a criminal offense without due process of law, . . . nor shall be compelled in any criminal case to be a witness against himself."

Defendant's claim that the examination was made under compulsion must be sustained.   The traffic officer, who stopped defendant's car and immediately arrested him on the charge of driving while intoxicated, testified that he requested defendant to accompany him to Dr. Schroeder's office to be

examined; that defendant objected to being examined by Dr. Schroeder; but that in spite of the objection defendant was loaded by the officer in his car and compelled to accompany him to Dr. Schroeder's office and be examined there by him. Consequently, as the examination was made while defendant was under such duress, the court erred in ruling that he voluntarily submitted thereto and therefore waived whatever constitutional privilege of immunity he may have had.

There remains, however, the question whether, in the course of the examination by Dr. Schroeder, defendant was compelled "to be a witness against himself" within the meaning of these terms, as used in sec. 8, art. I, Wis. Const. There has been and still is some conflict in the decisions and authorities as to whether this constitutional prohibition against compelling a person accused of a criminal offense to be a witness against himself is applicable to only the use of physical or moral compulsion to extort oral or written communications ·or testimonial evidence from him, or whether it extends to also the exclusion of his body or personal attire as evidence when it may be material. In 3 Jones, Evidence (1st ed. 1896), it was stated in p. 1953, sec. 890, that—

"The privilege extends to the acts as well as the words of the witness, and it has frequently been held that a witness cannot be compelled to allow an inspection of parts of his person, when it would tend to criminate him. . . ."

However, in *Thornton v. State,* 117 Wis. 338, 93 N. W. 1107, 98 Am. St. Rep. 924, this court, in considering the extent of the immunity afforded an accused under sec. 8, art. I, Wis. Const., held (syllabi)—

"1. Such portions of the person or attire of an accused person as are customarily open to observation are legitimate sources from which witnesses may give testimony of the result of such observation; and it is not a forcing of a prisoner to be a witness against himself within the meaning of sec. 8,

art. I, Const., to require him to give to witnesses, in court or out of court, an opportunity to make such observation.

"2. To require one accused of crime to surrender his shoe to an officer does not constitute an unreasonable search or seizure within the prohibition of the fourth amendment, Const. of U. S., and sec. 11, art. I, Const. of Wis.; and witnesses who have compared the shoe so obtained with tracks in the snow near the place where the crime was committed may properly be allowed to testify to the result of such comparison."'

In the opinion then filed there is an extended and excellent review of many cases and authorities on the subject; and in connection therewith the court stated the following (p. 342) :

"While, however, the constitution, in perpetuation of the rules of the common law, must be held to protect one from being compelled to disclose any criminatory fact, either by words or by surrender of papers, documents, or other effects, which, in the nature of things, he has a right to keep secret, it cannot be held to exclude those sources of evidence which have always been recognized as legitimate. Because a fact pertains to or is connected with the person of an accused, it is not necessarily secret. Of course, the personal appearance of one, his obvious physical characteristics and his attire, are things usually open to observation by others, and from time immemorial testimony by those who have observed them has been received and has been considered in no wise to invade the privacy of the person observed. How far these opportunities for observation may be coerced when one is in custody has been the subject of discussion under many aspects. That a man's head is bald is a fact ordinarily observed and known by many who come in contact with him. Does it not thereby cease to be one of those private, secret facts which it is an invasion of his right to have observed against his will? May he not, when in custody, be required to remove his hat and thus give the opportunity of observation which has commonly existed for those coming in contact with him? It seems that this must be so. There are, of course, extreme cases in both directions about which courts would hardly doubt. . . . The illustrations of the removal of the hat, or removal of a veil for opportunity to observe the face, are perhaps as extreme

in the other direction. In line, however, with such illustrations, are the many cases where an accused present in court has been held properly required to stand up to facilitate a witness in identifying him, or to enable observation of some obvious fact in his appearance. . . . It seems to us plain, without deciding the exact location of the dividing line between what is proper and what is improper in this very broad field, that the evidence now complained of falls clearly and safely within the principle of the cases last referred to. Not only in this country ever since the adoption of the constitution, but in England long before, it has been usual, upon the arrest of the prisoner, to subject him to a search. . . . The fruits of such customary and not unreasonable search fall within the principle enunciated in *State v. Nordstrom, supra* (7 Wash. 506), and which we adopt as an approximate guide upon such subject, namely, that such portions of the person or attire of an accused as are customarily open to observation are legitimate sources from which witnesses may give testimony of the result of such observation, and that it is not a 'forcing of a prisoner to be a witness against himself to require him to give to witnesses, in court or out of court, an opportunity to make such observation. Within this rule it would have been entirely competent for the sheriff or any one else to have noticed the shoes of the plaintiff in error, and to have testified, so far as he was able, to a comparison between them and the footprints near the place of the assault. . . . We are satisfied that the required surrender of defendant's shoe did not constitute any unreasonable search or seizure, and that the form and outlines of one's shoe are not so naturally secret that the enforcing opportunity to observe them requires of the accused a disclosure of a fact which he has any right to withhold, so as to constitute any infringement of the constitutional command that he be not compelled to be a witness against himself."

In relation to the rule and conclusions thus stated there has been no change in this state. On the contrary, in discussing in *Jessner v. State,* 202 Wis. 184, 189, 231 N. W. 634, 71 A. L. R. 1005, the scope of the examination which could legitimately be made by physicians appointed under sec. 357.12, Stats., in a criminal case to make examinations before trial in

regard to the mental condition of an accused person, we said;—

"*Thornton v. State,* 117 Wis. 338, . . . is a very well considered case treating philosophically and historically the sources of these constitutional provisions. While it is the duty of courts to jealously protect the rights which these constitutional provisions afford accused persons, it is pointed out that because a fact pertains to or is connected with the person of an accused it is not necessarily secret, and that the personal characteristics of an accused which are commonly open and observable to all are not of that secret nature which the constitutional provisions we are discussing were designed to protect. For instance, a person may be required to stand up in court so that he may be identified. He may be required to remove his hat so that it may be ascertained whether he is bald, and that case held that it was not error to require an accused to deliver to witnesses his shoes for the purpose of comparing them with footprints found near the place of the crime."

And the rule applied in *Thornton v. State, supra,* has been sanctioned and followed in the great majority of jurisdictions. In *Holt v. United States,* 218 U. S. 245, 252, 31 Sup. Ct. 2, 54 L. Ed. 1021, the court held that, on an issue as to the identity of an accused as the committer of a crime and whether a blouse was his, testimony that, after being arrested, he had put on the blouse and it fitted him was admissible regardless of whether he had put on the garment voluntarily or while he was under arrest. Mr. Justice HOLMES said,—

"It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."

Likewise, in addition to the authorities cited in the *Thornton Case, supra,* in support of that rule, the following are also

in accord therewith, to wit: *State v. Gatton,* 60 Ohio App. 192, 20 N. E. (2d) 265; *Allen v. State,* 183 Md. 603, 39 Atl. (2d) 820; *Commonwealth v. DiStasio,* 294 Mass. 273, 284, 1 N. E. (2d) 189; *United States v. Kelly* (2d Cir.), 55 Fed. (2d) 67, 69; *United States v. White,* 322 U. S. 694, 698, 64 Sup. Ct. 1248, 88 L. Ed. 1542; *Feldman v. United States,* 322 U. S. 487, 64 Sup. Ct. 1082, 88 L. Ed. 1408; *Johnson v. Commonwealth,* 115 Pa. 369, 9 Atl. 78, 81; *Commonwealth v. Valeroso,* 273 Pa. 220, 116 Atl. 828, 830; *Commonwealth v. Musto,* 348 Pa. 300, 35 Atl. (2d) 307, 311; *People v. Sallow,* 100 Misc. 447, 165 N. Y. Supp. 915, 920, 924; *State v. Oschoa,* 49 Nev. 194, 242 Pac. 582, 587; *Richardson v. State,* 168 Miss. 793, 151 So. 910, 911; *State v. Barela,* 23 N. M. 395, 402, 403, 168 Pac. 545, L. R. A. 1918 B, 844; *State v. Duguid,* 50 Ariz. 276, 72 Pac. (2d) 435, 438; *Villaflor v. Summers,* 41 Philippine, 62, 68; Underhill's Crim. Ev. (3d ed.) sec. 816; 3 Wharton, Crim. Ev. (11th ed.) p. 1979; 1 Greenleaf, Evidence (16th ed.), p. 615, sec. 469e; 8 Wigmore, Evidence (2d and 3d eds.), sec. 2263–2265. As this court said in relation to the authority last cited,—

"Mr. Wigmore in his work on Evidence (vol. 3, sec. 2250 *et seq.*) and in other writings (5 Harv. Law Rev. 71) has rendered a great service to the public, and the legal profession in particular, by his learned and masterful exposition of the origin and scope of the constitutional provision in question. The constitutional rights of the citizen secured to him by the provision in question should be carefully guarded, but it is safe to say that it was never intended by the framers of the constitution that this clause should be so construed and applied as to make it principally the buckler and shield of crime or so as to furnish an easy means of escape from deserved responsibility for criminal conduct." *State v. Lloyd,* 152 Wis. 24, 29, 139 N. W. 514.

It follows that in the case at bar the court did not err in admitting,—and in subsequently denying defendant's motion to

strike out,—the testimony of Dr. Schroeder to the following effect, in relation to the examination which he made, to wit:

After a brief history was taken, defendant's mental attitude, the odor of his breath, and the congestion in the eyelids was noted, and his pulse was taken. He was given a piece of paper on which to write his name, and was subjected to a number of neurological tests, which consisted in observing the gait, observing the speech, having him protrude his tongue from,—into a midline,—testing the reflexes, both the deep reflexes such as the knee jerk and the superficial reflexes. The co-ordination is tested by having defendant stand with his feet together and his eyes closed. He is instructed to stand thus and touch the tip of his nose with the tip of each index finger alternately. And that (in answering a question as to whether defendant "was drunk or sober based upon your observation of this man, from the tests that you gave him") defendant "was suffering from an acute alcoholism."

As there is no proof as to what, if anything, was said by defendant when "a brief history was taken," or was written by him upon the piece of paper given to him, it cannot be assumed that there was thereby extorted from him any communication or testimonial evidence against or prejudicial to himself. Consequently, there does not appear to have been any violation or invasion of defendant's privilege of immunity under sec. 8, art. I, Wis. Const., by the making of the examination in question or the admission of the testimony of Dr. Schroeder in relation thereto.

*By the Court.*—Judgment affirmed.