STATE, Respondent, vs. Cox, Appellant.*

*November 10—December 5, 1950.*

* Motion for rehearing denied, without costs, on February 6, 1951.

*W. J. Boyle* of Darlington and *Laurence W. Hall* of Madison, for the appellant.

For the respondent there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *John A. Moore,* district attorney of Winnebago county, and oral argument by *Mr. Moore* and *Mr. Platz.*

FAIRCHILD, J.    This defendant was found guilty by a jury of having received stolen property of the value of $95 and concealing and aiding in the concealment of stolen property of the value of $636. A warrant was issued on January 16, 1950, in which defendant was charged with having committed the crimes on January 13th of that year. The evidence sufficiently establishes that the clothing in question had been stolen and that it was later found in possession of the defendant, and that on January 13, 1950, he was doing the things charged against him. The articles were seized at the time of his arrest in an automobile which was in his possession and which he was then operating.

The articles referred to were offered in evidence, together with testimony showing the ownership and the unlawful taking. The defendant sharply challenges the propriety of permitting that testimony to be offered against him, because, as he asserts, the search of the automobile and seizure of articles found therein were made without a search warrant.

If the search and seizure were unlawful, it follows that the evidence was improperly admitted, and that a new trial should be granted. But it is considered that the search was predicated upon and warranted by a preceding lawful arrest, and that at the time the articles were under his control, that is, they were in his possession. It is conceded, of course, that no warrant for the arrest of the defendant had been issued at the time of his apprehension. However, it does appear that the officers were searching for two men who had committed the crime of larceny in 1948. The Neenah police department had been informed that those identical men were in the vicinity on this day and had been in the very store from which, as alleged, they had stolen merchandise in October, 1948. Their conduct at all the times which are material here was such as to show they were engaged in an effort to steal merchandise after or according to a method often described as shoplifting. This information was communicated to the police. The information thus given supplied the officers with grounds to arrest the two men without a warrant. It is provided by statute that an arrest by a peace officer without a warrant for a misdemeanor is lawful whenever the officer has reasonable grounds to believe that the person to be arrested has committed a crime and will not be apprehended unless immediately arrested. Sec. 361.44 (1), Stats. 1947, reads:

"An arrest by a peace officer without a warrant for a misdemeanor is lawful whenever the officer has reasonable grounds to believe that the person to be arrested has committed a misdemeanor and will not be apprehended unless immediately arrested or that further personal and property damage may likely be done unless immediately arrested."

With relation to the arrest of the defendant Cox, of course an arrest cannot be made on a mere suspicion that one may have committed a crime or that he is engaged in the commission of one. To warrant an arrest there must be at the

time in the possession of the officer information which goes beyond suspicion and brings into existence occasion to act on facts constituting probable cause. Probable cause for an arrest has been defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused guilty. *Diers v. Mallon,* 46 Neb. 121, 64 N. W. 722; 50 Am. St. Rep. 598; *Hawkins v. Lutton,* 95 Wis. 492, 70 N. W. 483. In that case, at page 499, it is said: "The authority of conservators of the public peace to make arrests in such cases should be liberally construed and upheld, but always at the risk that they will be liable if it be misused or abused." Probable cause, however, does not depend upon the actual state of the case in point of fact, as it may turn out upon legal investigation, but on knowledge of the facts and circumstances which would be sufficient to induce a reasonable belief in the truth of the accusation. And circumstantial evidence may constitute probable cause.

The signs of probable cause appearing, including information given the officer by reliable informants, he is to act. Courts have held that, where an officer of the law had direct personal knowledge from seeing certain things that the suspected person is committing a crime in his presence, he may lawfully arrest him as well as when the signs show him to have committed a crime not in the presence of the officer. *Day v. United States* (8th Cir.), 37 Fed. (2d) 80. While the law concerning search and seizure was much discussed during the prohibition period, the general and fundamental rules applying to the administration of law are to be followed. In the case of *Carroll v. United States,* 267 U. S. 132, 149, 45 Sup. Ct. 280, 69 L. Ed. 543, Mr. Chief Justice TAFT said: "On reason and authority, the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehi-

cle contains that which by law is subject to seizure and destruction, the search and seizure are valid." While that case treated with the violation of the Prohibition Act, he observed: "The Fourth amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens." It appears that that case is authority for the doctrine that search for and seizure of stolen goods is to be considered as on a different basis and as totally different from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained or for using them as evidence against him.

In searching for two men who had committed a crime in 1948, there was an unexpected discovery of evidence which suggested the commission of a more recent transgression. This discovery brought to the knowledge of the officers sufficient facts and circumstances to cause them to realize that probable cause existed to warrant an arrest if the perpetrators of this more recent crime could be found. The defendant Cox was not known to be involved in any of the circumstances at the moment when the information was carried to the police department before what may be described as the pursuit of the two men began. But important information came to the officers before they arrested Cox, as will appear from noting the developments arising out of the officers' pursuit of the two men accused of the 1948 larceny. The defendant Cox had at the time of this discovery placed himself well within the connection or relation of aider and abettor and of acting in concert with the men whom the officers were seeking. At the time of the arrest there existed facts known to the officer constituting reasonable grounds for probable cause to believe that the actors in this shoplifting enterprise had acquired possession of articles of merchandise. The facts were such that the officers in the light of their knowledge, because of

information conveyed to them and things which they had seen, could reasonably infer a continuance of the illegal and criminal acts of the two men with the knowledge of the defendant Cox and also that he was then taking part and escaping with the goods believed to have been stolen recently.

After the police headquarters had been informed that the perpetrators of the crime or misdemeanor of 1948 were again in the neighborhood and attempting to carry out their designs, Officer Schmidt received the information through a message communicated through a police call box telling him to go to Kiefer's store to investigate the complaint. Captain Kohfeldt testified that he saw Schmidt go to the telephone and saw him again "a very short time later. He came back out on North Commercial street, on the west side of the street, and turned to his right a few paces, and then returned out to the middle of the intersection where I was. . . . He told me that—he asked me if I had seen the two tall men that he had helped across the street a few minutes earlier. . . . He stated that he had been down to Kiefer's Clothing, and that two men that had been in there previously—when a suit was missing—were recognized in there by Tuckis, and had just left there." In answer to the question "Did he describe the two men who were in the store to you?" the officer answered: "He did, to the extent of saying that they were two tall men, one carrying a brief case, and that he had helped them across the street shortly before that and had I seen them." He further testified: "I had seen them cross the street from the north side of West Wisconsin avenue to the south side of West Wisconsin avenue." The next time Kohfeldt saw these men after they had walked across the street they were in a green car which evidently had been awaiting their coming. Kohfeldt stopped the car at the intersection, and he described the car as a "green late-model car, with a foreign license on it, red numerals with a luminous or silver background." At the time he saw these men Cox was with them

in this automobile. The officer had a conversation with Cox, who was driving, about attempting an illegal left-hand turn. He later recognized the driver as Cox. The circumstances just detailed came to the attention of the officers before the arrest of Cox was made. Now with respect to the arrest, it came about in this way: When Kohfeldt learned what had occurred in the Kiefer store, he called a squad car to pursue the green automobile. This was done by following it to the intersection of Main and Mills streets in Menasha. On Mills street Captain Kohfeldt observed three men walking on the sidewalk, two of whom, at least, fitted the description of the men he had seen in Neenah on the street and in the car. He also observed the green car which Cox had been driving with a foreign license parked within about seventy-five feet of the intersection of Main and Mills streets. He walked over to the car, looked through the window, and saw in it a pair of trousers in such an unfinished state as would appear on the counters in a clothing store, and in addition he saw considerable other clothing in the back of the car. He then returned to the squad car and parked in a near-by lot. A few minutes later defendant Cox appeared. Cox got into the green car and drove it a short distance. Kohfeldt followed in the police car and stopped him, placed him under arrest, and directed him to get into the squad car. The officers then took charge of the green car, an Oldsmobile, and found it to contain over $600 worth of new clothing with price tags attached.

There was considerable testimony offered, but reducing it to its plain meaning, the evidence is that the officers possessed sufficient information before the arrest of the defendant Cox to furnish them with sufficient grounds to warrant their actions. Thus, before the seizure of the evidence there was reasonable ground and probable cause to believe that the defendant was engaged in acting in concert with the men for whom the officers were searching, and that they were, as we

said before, endeavoring to carry on their scheme of unlawfully acquiring by means of larceny certain merchandise. There was in the possession of the officer evidence warranting the arrest. This situation existed at the time of and prior to the taking into possession the car and the articles in the car. At that time there were a number of definite acts directly chargeable to the defendant which created conditions and circumstances showing him to be acting in accord with and for the benefit of his coconspirators. Therefore at the time of defendant's arrest there was in the presence of the officers evidence warranting the arrest.

As the situation then existed and as it was disclosed to the officer, there were reasonable grounds for believing that Cox was an actor presently in complete accord with the two men plying their efforts in a similar manner as in the crime for which they were being sought. This is generally a matter of inference deduced from acts of the person accused, done in pursuance of an apparently criminal and unlawful purpose in common with his associates. The events here are such, under all the circumstances, as to afford ground for inference that a concert of effort existed between the defendant Cox and the other two men. We do not deem it necessary to set out at length the evidence which we have already summarized. The circumstances warranting the arrest, it followed as a matter of course that the property found in the defendant's possession was properly seized by the officers. The law does not prevent the state from using evidence thus discovered. Under the circumstances then existing, the officers were proceeding lawfully in their apprehension of the defendant and they were expected to see that which was apparent. The evidence was discovered while the arrest was taking place and, therefore, it is considered that there was no illegal search. The rights of the defendant have not been transgressed by any act which can be styled unlawful search or

seizure. *State ex rel. Wojtycski v. Hanley,* 248 Wis. 108, 20 N. W. (2d) 719; *State v. Hoffman,* 245 Wis. 367, 14 N. W. (2d) 146.

*By the Court.*—Judgment of conviction affirmed. Cause remanded with directions to set aside the stay and for further proceedings according to law.

GEHL, J. (*dissenting*). What the majority says with respect to the arrests and both searches would certainly be applicable if warrants had been issued for the arrest of the two men and they had been arrested and the car in their possession had been searched. The officers had sufficient information upon which a complaint alleging the violation in October, 1948, could properly have been made and upon which a warrant for the arrest of the two big men referred to could properly have been issued. The officers with the information which they had to the effect that the same two men who were suspected of having stolen goods from the Kiefer store in October, 1948, had again been in the store on January 13, 1950, and that they answered the description of the men recalled by Kiefer's employees to have been in the store at the earlier date would have been justified in arresting the two men had they had a warrant. But I am convinced that without warrants Officers Kohfeldt and Spanbauer did not have sufficient or effective information to warrant taking even the two big men into custody in January, 1950. Much less did they have sufficient or effective information to justify the arrest of the defendant Cox and the search of the automobile in his possession without a warrant. Even now after the trial it appears that there was no reason to suspect that Cox had been a party to the offense committed in October, 1948.

We have recently heard and read much with respect to establishing "guilt by association." Are we to say that because Cox was found in the company of the two big men on January 13, 1950, with no suspicion that he had been with them in October, 1948, his association with them on the later

date justifies his arrest and the search of the automobile in his possession? If guilt might in some cases be established by association it certainly would be stretching the doctrine to its very limit to apply it here.

At the time that the contents of the automobile were first observed by the police officers and the defendant was taken into custody no one knew or even suspected that an offense, in which either of the three men might have been involved, had been committed on January 13, 1950. All of the state's witnesses agree that the activity of the officers on that day was directed toward the apprehension of the two men who were suspected of having stolen goods from the Kiefer store in October, 1948.

With respect to that offense not even a suspicion was attached to Cox.

The officers who made the first observation of the automobile did not testify that they suspected that it contained the goods stolen in October, and, quite naturally, we have not been asked to infer that they had such suspicion.

This examination of the automobile, made by the officers before they arrested the defendant, was an illegal search and did not justify the arrest. Looking through a car window the officers saw some clothes lying over some luggage, and a pair of pants, "the ends of them still had the pinking edge on." Certainly, that observation, coupled with nothing except a report that two large men were suspected of being in Neenah and that they were suspected of having stolen some clothing fourteen or fifteen months before, and lacking any information that any offense had been committed on the day of the arrest with which they or the defendant had been connected, cannot be held to be sufficient to warrant the search, unless the rule of *Hoyer v. State,* 180 Wis. 407, 193 N. W. 89, is to be entirely ignored.

In that case two deputy sheriffs discovered an automobile which had been wrecked. They could "smell something

funny," an odor coming from the car. They searched it and found contraband liquor. Against the protest of the owner the car was taken to the county jail. He was arrested on the following day. The court held that the search was unlawful. In the *Hoyer Case* the suspicion of the officers was aroused by the smell of liquor; here it was aroused by the presence in defendant's car of an innocuous pair of pants. It seems to me that the odor of contraband liquor comes nearer being a suspicious circumstance than does the presence in an automobile of a pair of pants "with pinking on." It follows as in the *Hoyer Case,* that the search was illegal and did not afford a basis for the subsequent arrest. *Allen v. State,* 183 Wis. 323, 333, 197 N. W. 808.

There is no other basis for the arrest. It was illegal. Whether it be sought to justify the arrest under the common law or by virtue of any applicable statute the effort fails. First, the officers had no reason to suspect nor did they suspect that an offense had been committed by the three men or either of them on January 13, 1950. Assuming, however, for purposes of argument only, that they had or did, none, if it had been a misdemeanor, was committed in their presence, *Mantei v. State,* 210 Wis. 1, 245 N. W. 683, and, if it had been a felony committed without their presence, the arrest was made without proof of probable cause, *Bergeron v. Peyton,* 106 Wis. 377, 82 N. W. 291, which is entirely lacking in this case.

The term "probable cause," as it is applied to an arrest without warrant and as it is used in the *Bergeron Case,* may properly be defined as it was in *State v. Baltes,* 183 Wis. 545, 198 N. W. 282, where the requirement for the issuance of a search warrant was considered. The court there said that, while the term does not require positive proof of the existence of facts upon which a search warrant is issued "The term probable cause has a well-defined meaning in the law, which

is the existence of such facts and circumstances as would excite an honest belief in a reasonable mind, acting on all the facts and circumstances within the knowledge of the magistrate, that the charge made by the applicant for the warrant is true." (p. 549.)

Should a less stringent definition be given the term when it is applied to the authority of a police officer to make an arrest without process?

Sec. 62.09 (13), Stats., which authorizes an arrest without process by a city police officer of a person "found in the city . . . violating any law of the state or ordinance of such city" does not relax any of the rules referred to.

When the arrest was made there was neither fact nor circumstance to excite an honest belief in a reasonable mind that the defendant Cox had at any time committed any offense in the vicinity of Neenah. The fact or circumstance that he had in his car an innocuous pair of pants and other clothing, the pants "with pinking on," if it had been discovered as the result of a valid search, could not possibly be said to excite the honest belief referred to in the *Baltes Case*. Nor could the hearsay information received by the arresting officers that the same two big men suspected of larceny committed in October, 1948, were back in Neenah. With respect to the clothing, a person may lawfully possess goods of that kind just as he might lawfully have possessed intoxicating liquor during the period of so-called prohibition. *Allen v. State, supra; Testolin v. State,* 188 Wis. 275, 205 N. W. 825; *Jokosh v. State,* 181 Wis. 160, 193 N. W. 976.

"The statute [sec. 62.09 (13)] clearly contemplates that evidence justifying arrest without warrant is evidence that comes to the officer through his sense of sight or other natural senses of a breach of the peace, before the arrest and search. He may not arrest for a misdemeanor on hearing or suspicion." *Allen v. State, supra,* (p.335). See also *Mantei v. State, supra.*

We have held that a search warrant cannot be issued upon a statement under oath based upon information and belief unless there is competent evidence of the facts underlying the belief and those facts are sufficient to support a finding of probable cause. *Glodowski v. State,* 196 Wis. 265, 220 N. W. 227. I have already pointed out that in my opinion there are not facts here sufficient to support a finding of probable cause. It does not seem to me to be logical to contend that an arrest can be justified if it is based only upon what an officer may have heard from others. Is the contention that an arrest may be made solely upon hearsay information that an offense had been committed fourteen months earlier less fallacious?

Since the arrest was unlawful and the first search was unwarranted, the second search—that made after the arrest and as an incident to it—cannot be justified. 4 Am. Jur., Arrest, p. 48, sec. 68; *Allen v. State, supra,* (p. 333):

"Policemen are not to try the accused. If they see him in the act of committing an offense they may arrest him without a warrant. But if the accused is searched without warrant as a basis of arrest, or if arrested without warrant as a basis of search, in order to ascertain that the accused is committing an offense, the proceedings are void from the beginning."

It is said that to clothe an offender with such protection would permit the escape or relief from punishment of many violators. I do not understand that the detection of crime and the punishment of an offender is of greater moment than the preservation of constitutional rights. In considering the importance of the rights guaranteed by the constitution, particularly that which is involved here, we may not overlook what was said by Mr. Justice ESCHWEILER in *Hoyer v. State, supra,* (p. 417):

"We see no reason in logic, justice, or in that innate sense of fair play which lies at the foundation of such guaranties, why a court of justice, rejecting as abhorrent the idea of the

use of evidence extorted by violation of a defendant's right to be secure in person and exempt from self-incrimination though it may result in murder going unwhipt of justice, should yet approve of the use, in the same court of justice, by state officers, of that which has been obtained by other state officers through, and by, a plain violation of constitutional guaranties of equal standing and value, though thereby possibly a violation of . . . law may go unpunished."

It is obvious that without the evidence acquired by means of the illegal search there could have been no conviction of the defendant. The judgment should be reversed.

I am authorized to state that Mr. Justice HUGHES concurs in this dissent.