STATE, Respondent, vs. PHILLIPS, Appellant.

*September 19—November 5, 1952.*

304

For the appellant there was a brief by *N. Paley Phillips* and *Irving D. Gaines,* both of Milwaukee, and oral argument by *Mr. Gaines.*

For the respondent there was a brief by the *Attorney General* and *William J. McCauley,* district attorney of Milwaukee county, and *Joseph E. Tierney,* deputy district attorney, and oral argument by *Mr. Tierney.*

BROWN, J.  For reasons not disclosed, on the evening of July 23, 1949, Detectives Bogart and Reitz, of the Milwaukee police force, were detailed to watch a certain automobile parked near Phillips' residence.  At 10:40 p. m. appellant came out of his third-floor apartment and drove away in the automobile, followed by the two detectives in their car.  After some cruising around he was joined by Jerome and Samuel

DiMaggio, whom the detectives recognized from pictures of the two men in their possession. It was then about midnight. The three spent the next three hours cruising in the neighborhood of the International Harvester Company's plant, making four circuits of the plant at slow speed, with occasional stops at filling stations and taverns. At 3 a. m. July 24th, Jerome DiMaggio drove the automobile away from such a filling station, followed by the detectives who were not able to see whether Phillips was then in the automobile. The detectives lost sight of the automobile at about 3:15 a. m. and were unable to find it again. At 6 a. m., while they were searching for the car, they heard on their radio that there had been a burglary at the Harvester plant. They went there and found other police were in charge, and they observed the Harvester Company vault with a section of its steel door burned out by an acetylene torch which lay on the floor. Near the vault there were scattered fragments of fused steel and a white, powdery insulating material, and the floor showed tracks of shoes whose rubber soles made a distinctive, peculiar pattern. After leaving the plant, and at about 6:20 a. m., they heard a radio request to help Detective Cherney at a certain location. Cherney had previously been at the Harvester plant where he, too, had observed the evidence of burglary. Bogart and Reitz responded to the call and found Cherney had Sam and Jerome DiMaggio in custody and had taken from Sam a paper parcel from which a pair of tennis shoes protruded. Sam said they were his. Detectives Cherney, Bogart, and Reitz recognized that the pattern of the soles was the same as the shoe prints on the floor near the Harvester Company's vault.

Bogart and Reitz then went to Phillips' home which they reached about 7:15 a. m. They knocked at the door and said they were police officers. Phillips' wife opened the door. The appellant stood behind her. Mr. Bogart at once informed John Phillips that he was under arrest for suspicion of bur-

glary. Phillips, who was in his underwear, said he must put on more clothes. Followed by Reitz he went to a closet where he took some clothing and dropped it on the floor. Being suspicious, Reitz asked him what he was covering up. Phillips said the garment just fell. Reitz picked up the fallen garment and found it concealed the hat and shirt which he had seen Phillips wearing when they were following him. Reitz took possession of the hat, shirt, and a pair of shoes and socks and trousers, all of which were damp and sweaty. Material adhering to these garments was analyzed by the state crime laboratory and proved to be globules of fused steel, and fragments of paint, and insulating material, identical in composition and color to the materials of which the Harvester vault was constructed and to the debris lying around the burned safe. Many of the specimens taken from the clothing showed that they had been subjected to extreme heat. Phillips' shoes also contained bits of cinders like those under the Harvester window.

The shoes taken from Sam DiMaggio were demonstrated by the state crime laboratory to be those which had made the prints on the floor near the safe and Sam DiMaggio's clothing yielded specimens like those found in Phillips' garments.

The trial court's memorandum states:

". . . the presence of the defendants Samuel Salvatore DiMaggio and John Franklin Phillips at the scene of the crime while it was being perpetrated and their participation therein is uncontrovertible. It is absolute. . . .

"Although the evidence connecting the defendants Samuel Salvatore DiMaggio and John Franklin Phillips with the offense charged is circumstantial, actually it connects them with the perpetration of the crime as positively, if not more so, than if actual eyewitnesses had been produced who had seen them actually assisting in cutting open the vault door when the offense was committed. . . .

"The fragments found in the cuffs of John Phillips' trousers taken from him at the time of his arrest positively came

from his participation in the burglary. The proof is inescapable that he wore said trousers at the time of the burglary. The same situation is true with respect to the shoes and shirt taken from him at the time of his arrest.

"The cinders came from under the open window in the rear of the burglarized plant, and not from any other source."

Appellant concedes that a valid arrest may be made without a warrant when the arresting officer has reasonable, probable cause to believe the person arrested has committed a crime, but he denies that the detectives had such cause under the circumstances of this case.

Bogart and Reitz knew, personally, that a felonious attempt had been made prior to 6 a. m. to open the Harvester safe; they knew, personally, that shoes carried by Sam DiMaggio at about 6:30 a. m. were worn by some person concerned in the attempt; they knew, personally, that at least until 3 a. m. Sam DiMaggio, Jerome DiMaggio, and Phillips had spent the night in company, driving around the scene of the burglary in Phillips' automobile in an unusual and suspicious manner and that at 3:15 a. m. Jerome was driving the car and eluded the detectives. In our view any reasonably intelligent, cautious man would conclude that the three were engaged in some common enterprise and when, by the capture of the rubber-soled shoes, it appeared that one of them had participated in a burglary, reasonable men would conclude that in all probability the burglary was the enterprise and that they all participated in it in one way or another.

"An officer with authority to conserve the peace . . . may, without a warrant, arrest any person who has committed a felony in or out of his presence.. . . . He may arrest any person whom he, upon reasonable ground, believes has committed a felony, . . ." 4 Am. Jur., Arrest, p. 18, sec. 25.

We conclude that the detectives' belief that Phillips had participated in the burglary was sufficiently supported by their own observations that night and morning to meet all require-

ments enabling them to make a valid arrest without a warrant.

Bogart testified that when the door of the apartment opened, revealing Phillips, Bogart said to him that he was under arrest for suspicion of burglary. Appellant submits that since there is no offense of "suspicion of burglary" for which a person may be arrested, no arrest in fact was ever made. We are unable to discover that there is any formula whose utterance is essential to the validity of an arrest.

"An arrest, as the term is used in criminal law, signifies the apprehension or detention of the person or another in order that he may be forthcoming to answer an alleged or supposed crime." 4 Am. Jur., Arrest, p. 7, sec. 4.

"An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." 4 Am. Jur., Arrest, p. 5, sec. 2, cited in *Peloquin v. Hibner* (1939), 231 Wis. 77, 84, 285 N. W. 380.

Corpus Juris Secundum, itself, classifies arrests of this nature thus:

"6. . . . a. Power to arrest without warrant
      "b. For felony . . .
           "(1) In general
           "(2) On suspicion of felony . . .
"At common law, and under many statutes incorporating the common-law rule, a peace officer may arrest, without a warrant, one whom he has reasonable or probable grounds to suspect of having committed a felony, even though the crime is not committed in his presence, and even though the person suspected is in fact innocent." 6 C. J. S., Arrest, pp. 584–587, sec. 6.

The words and conduct of the detectives leave no doubt that they were taking Phillips into custody because they had reasonable and probable grounds to suspect that Phillips had

committed a burglary and there is no doubt that Phillips so understood them and submitted to the officers' will. Since, if there is reasonable and probable ground of suspicion, an arrest may be made, we find no cause to say that such an arrest is void because the officer stated the suspicion. We conclude that the few formalities requisite to constitute the arrest a valid and legal one were observed here.

Considering, as we do, that Phillips was actually and lawfully arrested, we reach his contention that the evidence yielded by his clothing was the fruit of an unreasonable search and seizure, in violation of the Fourth amendment to the constitution of the United States and of sec. 11, art. I of the Wisconsin constitution, and was, therefore, inadmissible in evidence.

It is well settled in this state that a search may be made as an incident to a valid arrest. *Mantei v. State* (1932), 210 Wis. 1, 4, 245 N. W. 683. That case left undecided whether the right of search extends farther than a search of the person. In *State v. Cox* (1950), 258 Wis. 162, 45 N. W. (2d) 100, after making an arrest, the police officers searched the prisoner's automobile and found stolen goods which this court considered admissible in evidence over objections like those upon which our present appellant relies. (The dissent in the *Cox Case, supra,* rests on the ground that the arrest itself was not valid and therefore did not support any search whatever.) That case is authority for the proposition that when the arrest is valid and the search is an incident thereto the search may extend beyond the person of the arrested individual to property within his immediate presence, control, and surroundings. Assuming that Detective Reitz' actions (in following Phillips to his clothes closet and uncovering that which Phillips attempted to conceal) amount to a search, such search is considerably less questionable than the one approved in the *Cox Case, supra.* Then, too, it may well be considered that in the instant case there was no search

whatever. It was Reitz' duty after the arrest not to permit Phillips to escape or to obtain weapons or to destroy or dispose of incriminating evidence. Reitz followed Phillips to the closet in performance of this duty, not to make a search and, as incidental to this duty, observed Phillips' effort to conceal the garments which Reitz had seen him wearing a few hours previously, whereupon Reitz took possession of this evidence.

We conclude that even if Reitz' actions constitute a search or a seizure under these circumstances, neither was unreasonable within the prohibitions of the state and federal constitutions, and the evidence so obtained was admissible upon the trial.

The learned trial court determined that the evidence, all of which was circumstantial, conclusively established appellant's guilt beyond all reasonable doubt. Phillips had certain explanations for the presence of incriminating materials in his clothing and relied on an alibi. His defense depends on the credibility of his witnesses and himself, and the credibility is a matter for the trial court. If believed, the state's evidence completely sustains the trial court's conclusions and establishes appellant's guilt.

Phillips was prosecuted for a violation of sec. 343.12, Stats., which reads:

*"Entry at night, breaking at day.* Any person who shall enter in the nighttime, without breaking, or shall break and enter in the daytime any dwelling house or any outhouse, thereto adjoining and occupied therewith, or any office, shop, or warehouse or other building, or any ship, steamboat, or vessel, railroad freight car or passenger car, . . ."

Sec. 343.13, Stats., recites:

*"Unlawful entry.* Any unlawful entry of a dwelling house, bank, trust company, or other building with intent to commit a felony shall be deemed a breaking and entering of such dwelling house, bank, trust company, or other building within the meaning of sections 343.09 to 343.122."

Phillips contends that no factual breaking was proved and the constructive breaking, as interpreted by sec. 343.13, Stats., by entry with felonious intent, does not apply to him because the Harvester building was an office, shop, or warehouse, named in sec. 343.12 and not expressly enumerated in sec. 343.13. He contends that such premises are not included in the words "or other building" as used in both sections. We see no legislative reason for such a construction and it does not appeal to our own conception of the meaning of the language of the statute. We conclude that the proof accepted by the learned trial court of Phillips' entry with felonious intent establishes within the terms of sec. 343.13 his constructive breaking of the Harvester building and consequent violation of sec. 343.12.

*By the Court.*—Judgment affirmed.