STATE, Plaintiff, vs. KROENING, Defendant.*

*November 9—December 4, 1956.*

* Motion for rehearing denied, without costs, on February 5, 1957.

For the plaintiff there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and *Rodney Lee Young,* district attorney of Rusk county, attorneys, and *John H. Bowers* of Madison of counsel, and oral argument by *Mr. Platz* and *Mr. Young.*

For the defendant there were briefs by *William P. Westphal* and *Ryan, Kain & Mikan,* all of Minneapolis, Minnesota, attorneys, and *Marshall Norseng* of Chippewa Falls of counsel, and oral argument by *Mr. Westphal.*

BROWN, J.   The answer to the First question is "No."

The applicable constitutional provision found in sec. 8, art. I, Wis. Const., is as follows:

"No person . . . shall be compelled in any criminal case to be a witness against himself. . . ."

In *Thornton v. State* (1903), 117 Wis. 338, 93 N. W. 1107, a person accused of rape was compelled after his arrest to surrender his shoe to be compared with footprints at the scene of the crime.  We said, page 341, that "the prohibition against one's being compelled to be a witness against himself should not be limited to exclusion of merely oral statements against himself."  Once it is admitted that the right not to be a witness against one's self in a criminal case extends beyond mere oral statements, the line of demarcation beyond which it shall be held that a defendant's right has been violated is neither straight nor clearly marked.  Mr. Justice DODGE in the *Thornton* opinion, *supra,* cites examples falling on each side of the line which are difficult to distinguish from each other on principle; the annotation to *Rochin v. California* (342 U. S. 165, 72 Sup. Ct. 205, 96 L. Ed. 183), in 25 A. L. R. (2d) 1396, presents many others.  But in the *Thornton Case* at least we approved the taking of defendant's shoe for the purpose of incriminating him, while stating that this

was not a violation of his right not to be compelled to be a witness against himself.

In *Green Lake County v. Domes* (1945), 247 Wis. 90, 18 N. W. (2d) 348, the defendant was arrested for operating an automobile while under the influence of intoxicating liquor. Under duress he was then subjected to a number of tests calculated to demonstrate his co-ordination or lack of it. The doctor who administered the tests thus described them (p. 97):

"After a brief history was taken, defendant's mental attitude, the odor of his breath, and the congestion in the eyelids was noted, and his pulse was taken. He was given a piece of paper on which to write his name, and was subjected to a number of neurological tests, which consisted in observing the gait, observing the speech, having him protrude his tongue from,—into a midline,—testing the reflexes, both the deep reflexes such as the knee jerk and the superficial reflexes. The co-ordination is tested by having defendant stand with his feet together and his eyes closed. He is instructed to stand thus and touch the tip of his nose with the tip of each index finger alternately. And that (in answering a question as to whether defendant 'was drunk or sober based upon your observation of this man, from the tests that you gave him') defendant 'was suffering from an acute alcoholism.' "

There was no evidence concerning the content of any oral or written statements by the defendant and we held (p. 97): "There does not appear to have been any violation or invasion of defendant's privilege of immunity under sec. 8, art. I, Wis. Const., by the making of the examination in question or the admission of the testimony of Dr. Schroeder in relation thereto."

The *Domes* decision was approved in *Barron v. Covey* (1955), 271 Wis. 10, 72 N. W. (2d) 387. There a person under arrest for drunken driving was requested to supply a sample of his urine for analysis to determine the alcoholic content. He refused, and upon his trial the prosecution was

not permitted to testify that he had refused. He was acquitted. On appeal the prosecution contended that the exclusion of such evidence was prejudicial error. The defendant contended that to require his urine for analysis, with subsequent testimony respecting the alcoholic content, would be to deprive him of the right reserved by sec. 8, art. I, Wis. Const., wherefore evidence that he had claimed his constitutional right could not be introduced to his prejudice. Obviously, as the attorney general's brief states, if the privilege protected such facts, defendant's refusal to disclose them would not be admissible evidence. The precedents relied on in both our *Domes* and *Covey* decisions are discussed in the opinions in those cases, rendering it unnecessary to repeat them here. It is sufficient now to say that in the *Covey Case* we held directly, page 14, that "the offered testimony on the part of the plaintiff city . . . could not properly be excluded on the ground of violating sec. 8, art. I of the state constitution." We conclude now that the *Domes* and *Covey* decisions require us to answer that an analysis of a party's bodily fluids against his will in a criminal case and explanatory testimony thereon by the analyst does not violate his privilege against self-incrimination within the meaning of sec. 8, art. I.

The next question of law certified by the trial court is:

"Second question: Does the receipt in evidence, over defendant's timely objection, of the results of an alcohol-blood test made on blood taken from the defendant while he was unconscious or semiconscious, and without his consent and while he was not under arrest, under circumstances set forth above, violate the prohibition against unreasonable search and seizure contained in article I, section 11 of the Wisconsin constitution?"

To this we reply "Yes."

The applicable part of sec. 11, art. I, Wis. Const., reads:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated."

It is, well settled in Wisconsin that a search of the person or of his immediate surroundings made incident to his arrest does not violate this constitutional provision. *State v. Phillips* (1952), 262 Wis. 303, 309, 55 N. W. (2d) 384. It is equally well settled that:

"No search of the person or seizure of any article found thereon can be made on mere suspicion that the person searched is violating the law, or without a search warrant, unless and until the alleged offender is in custody under a warrant of arrest or shall be lawfully arrested without a warrant as authorized by law." 47 Am. Jur., Searches and Seizures, p. 533, sec. 53.

In the case at bar the defendant was not under arrest when his blood was taken nor was he arrested for more than a week afterward. Wisconsin subscribes to the federal rule that evidence obtained by illegal search and seizure is inadmissible upon the trial. *State v. Cox* (1950), 258 Wis. 162, 166, 45 N. W. (2d) 100; *Hoyer v. State* (1923), 180 Wis. 407, 193 N. W. 89; *State v. Warfield* (1924), 184 Wis. 56, 58, 198 N. W. 854; *Jokosh v. State* (1923), 181 Wis. 160, 193 N. W. 976. If, then, the means by which the state came into possession of defendant's blood constituted a search and seizure, not incident to his arrest, it must follow that it was an illegal one, therefore unreasonable, and testimony regarding analysis of the blood was inadmissible.

The state's first argument is that the taking of the blood sample was not a search or seizure at all in the constitutional sense. While we are willing to admit that the founding fathers probably never dreamed of such a method of criminal investigation, we do not concede that the right to security of person specified by sec. 11, art. I, Wis. Const., does not extend to portions of the body as well as to its entirety. Surely that security is impaired if public officials may, without consent and without arrest, stick needles into human bodies and draw off and carry away such of the body's contents as

the officials deem expedient. Counsel says the amount abstracted in this case was small and the method used was medically approved. We do not see what difference that makes to the principle involved. We do not understand, in the case of "papers and effects," there is a minimum limit to property protected by sec. 11, art. I, so that articles or other possessions may·be taken away by officers of the law without a violation of the constitution if only the volume of the thing taken is sufficiently small. We cannot conceive that the search and seizure would have been held legal in *Hoyer v. State, supra,* if the officers had drawn off for analysis only a few ounces of the liquor discovered in defendant's automobile instead of removing the entire cargo.

The attorney general also informs us that this taking of blood was not search and seizure but was merely a physical examination. Again we must disagree if he means to imply that *because* it is physical examination it was not search and seizure. The two things are not mutually exclusive, and because we admitted in evidence the physical examination conducted in *Green Lake County v. Domes, supra,* it does not in the least follow that we must approve a seizure of blood even if that could be substantiated to be part of an otherwise unobjectionable physical examination. It is thoroughly recognized that property on the person is not to be seized by zealous officers who have no search warrant and who have not made a valid arrest. *Jokosh v. State, supra.* We do not understand that the constitutional provision in question forbids officers to go through one's pockets but permits them to go through his veins.

The state submits that where probable cause exists to arrest the driver without warrant, the fact that the search *preceded* the arrest is immaterial and does not prevent the search from being incident to the arrest. The statement of facts in the report of the learned trial court hardly warrants the assumption that there was probable cause to arrest Kroening

without warrant, but we pass that and observe only that he was not arrested until nine days after the accident. If we were to indulge in speculation, it would seem most likely that it was the result of the blood analysis rather than anything else which supplied the probable cause. While the attorney general correctly says that a search and seizure which is incidental to a lawful arrest does not violate the constitutional rights of the person searched, the lapse of time between the search and the arrest is important and in some cases, as this, vital in determining whether the search is incident to the arrest. In *Hoyer v. State, supra,* an arrest on the day following the search and seizure came too late for such incidental connection conferring admissibility upon the evidence so obtained. The time interval in the instant case, in the absence of any enlightenment contained in the facts reported by the trial court, is far too long for us to accept the state's suggestion that this search and seizure was incident to the arrest of defendant.

The state concludes its argument on this question by submitting that, because alcoholic content of blood diminishes with the passage of time, "need for prompt action justifies relaxation of rules relating to search and seizure." In other words, only so long as the constitution does not make convictions too difficult to obtain, may it be tolerated. This argument, we think, was satisfactorily answered by Mr. Justice ESCHWEILER in *Hoyer v. State, supra,* at page 417:

"Sec. 11, art. I, Wis. Const., *supra,* is a pledge of the faith of the state government that the people of the state, all alike (with no express or possible mental reservation that it is for the good and innocent only), shall be *secure* in their persons, houses, papers, and effects against unreasonable search and seizure. This security has vanished and the pledge is violated by the state that guarantees it when officers of the state, acting under color of state-given authority, search and seize unlawfully. The pledge of this provision and that of sec. 8 are each violated when use is made of such evidence

in one of its own courts by other of its officers. That a proper result—that is, a conviction of one really guilty of an offense —may be thus reached is neither an excuse for nor a condonation of the use by the state of that which is so the result of its own violation of its own fundamental charter."

And by Mr. Justice Dodge in *Thornton v. State, supra,* at page 341, referring to sec. 8, art. I, Wis. Const.:

". . . it has become established by almost unanimous concurrence of opinion that the rights intended to be protected by this constitutional provision are so sacred, and the pressure so great toward their relaxation in case where suspicion of guilt is strong and evidence obscure, that it is the duty of the courts to liberally construe the prohibition in favor of private rights, and to refuse to permit those first and doubtful steps which may invade it in any respect."

And by Mr. Chief Justice Vinje in *Jokosh v. State, supra,* on page 163:

"It is also said that, if searches such as this cannot be made, the prohibition law cannot be enforced. This may be true in part or it may be true in whole. The answer is that an article of the constitution having its origin in the spirit if not in the letter of the Magna Carta prevents it, and that it is the duty of the court to sustain and enforce the constitution in its entirety, and not to permit what may seem to be presently a desirable mode of procedure to annul such fundamental portions of our organic law as the freedom from unlawful searches. The importance of such a provision may be lost sight of in times of peace in a well-organized and well-administered state, but in times of stress or dissensions its value is as great as those who inserted it in the constitution conceived it to be."

We consider that if the time has come when convictions are more important than the preservation of the guarantees of secs. 8 and 11, art. I of the state constitution,—whose counterparts are found in the Bill of Rights, United States constitution,— these sections should be amended by popular vote

as the constitution prescribes, and not by a relaxation of rules by new judicial interpretation.

The last question which the trial court certified is:

"Third question: Does the receipt in evidence, over defendant's timely objection, of the results of an alcohol-blood test made on blood taken from the defendant while he was unconscious or semiconscious, and without his consent and while he was not under arrest, under the circumstances set forth above, constitute action by the state of Wisconsin which violates the due-process clause of the Fourteenth amendment to the constitution of the United States?"

To this we answer "Yes."

The pertinent part of the Fourteenth amendment is:

". . . nor shall any state deprive any person of life, liberty, or property, without due process of law; . . ."

We do not speculate on what our answer to this question would be if our answers to both the First and Second questions had been "No." But it appears to us that evidence admitted in violation of defendant's rights under the state constitution is a denial to him of due process of Wisconsin law and for a state to violate its own constitution to the prejudice of the defendant in a criminal case is to deny him due process within the meaning of the Fourteenth amendment.

*By the Court.*—The cause is remanded for further proceedings according to law not inconsistent with this opinion.

The following memorandum was filed February 5, 1957:

PER CURIAM (*on motion for rehearing*). The trial court requested an answer to the Third question but the parties submitted no argument on the subject. The state now says that we should have refrained from answering it without the benefit of argument. The Second question being answered unfavorably to the state's contentions, any answer to the Third

question does not affect the disposition of the cause and under these circumstances we conclude it would have been preferable to omit answering the Third question. Accordingly, we withdraw what is said in the opinion concerning it. The state's motion for rehearing is denied.