GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

RAYMOND CHESTERFIELD, et al., Defendants

Criminal No. 1420-1966

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

March 22, 1967

ALMERIC CHRISTIAN, ESQ., United States Attorney, Charlotte Amalie, St. Thomas, Virgin Islands, *for Government*

BRUCE MACGIBBON, ESQ., Assistant Attorney General, *for Defendant*

MICHAEL, *Municipal Judge*

## OPINION

The defendants herein, Otis Felix, Commissioner of Public Safety, Jens Hendricks, Assistant Commissioner of

Public Safety, Gustave Dowling, Deputy Commissioner of Public Safety and Raymond Chesterfield, Lieutenant of Public Safety, are charged with violation of 14 V.I.C. 703(4).[1]

The Government of the Virgin Islands was represented by Almeric Christian, Esq., U.S. Attorney, and the defendants by Bruce MacGibbon, Esq., Assistant Attorney General. Briefs were filed in lieu of oral argument.

After hearing the witnesses for the Government, counsel for the defendants moved the court for a dismissal on the ground that a prima facie case had not been made against the defendants. The motion was granted as to the defendants Otis Felix, Jens Hendricks and Gustave Dowling, but denied as to Raymond Chesterfield. The court also dismissed other charges against the other defendants and defendant Chesterfield.

The pertinent parts of the charge against the officers read as follows:

"That on the 13th day of October, 1966, ... all being officers or administrative officials of the Department of Public Safety of the Virgin Islands and hence public officers, did, under pretense of color or legal authority, interrupt and forcibly terminate a public lecture being conducted by Alexander Wilson, Sr., in the Emancipation Garden without regular process or other lawful authority for so doing, thus injuring the said Alexander Wilson, Sr., in his rights guaranteed by the 'Revised Organic Act of the Virgin Islands', to wit, his right of freedom of speech and his right to peaceably assemble."

---

[1] Whoever, being a public officer, or person pretending to be a public officer, and under the pretense or color of any process or other legal authority—
    (1) arrests any person or detains him against his will;
    (2) seizes or levies upon any property;
    (3) dispossesses any one of any lands or property; or
    (4) does any other act, whereby another person is injured in his person, property or rights—
without a regular process or other lawful authority therefor, commits oppression and shall be fined not more than $200 or imprisoned not more than 1 year, or both.

Briefly stated, although the evidence was somewhat conflicting, the facts of the case are as follows:

On the night of October 13, 1966, Alexander Wilson, Sr., was giving a lecture upon the Bandstand located in the Emancipation Garden, a public place, over a loudspeaker system, permission for which the court finds by the evidence he had obtained.

During his lecture or talk, he was interrupted by Lieutenant Chesterfield, who was there with other officers. Lieutenant Chesterfield testified he had heard Alexander Wilson, Sr., use certain expressions, which will be shown herein, causing him, the officer, to interrupt the speaker, telling him he was getting out of hand, so he had to stop it, thereafter pulling the light switch.

Continuing, defendant Chesterfield testified that he had received instructions from a superior officer, Assistant Commissioner Hendricks, to pay attention to the activities in the Emancipation Garden, as on the previous night the Department had received complaints of disturbance of the peace in the said place, wherein ". . . vulgar, profane and indecent words were used, plus slanderous utterances . . . ."

Witnesses for the Government testified that the Governor of the Virgin Islands was referred to as a "political monster," a "political marionette," a "political scamp," a "puppet," a "scoundrel" and referring to the Department of Public Safety, that most of the officers on the force had less brain than he. Another officer who was present, called by the Government as a rebuttal witness, testified on cross examination that he had heard some of the above-mentioned epithets, but to his knowledge Mr. Wilson did not use any obscene language, neither did he recall the word "thief."

Witnesses for the defendant testified that the speaker, with reference to the Police Department, said that some of them had no brains; that he had more than the whole

bunch; that the Department is a "cesspool of feces," which was repeated several times, and referring to the Administration he said that the Governor, Ralph M. Paiewonsky, is nothing but a "political scamp," a "liar," a "faggot," an "auntie-man" and his administration is "corruption," is "filth or something like that."

The court believes and finds that the above epithets or statements as testified by the witnesses, both for the Government and for the defendant, in one form or another, except as to referring to the Governor as a "thief", as statements or expressions emanating from the complaining witness, Alexander Wilson, Sr.

The defendant Chesterfield was also charged with Aggravated Assault and Battery for allegedly striking the complaining witness with a flashlight which the defendant borrowed from another officer who was standing below in order to assist the complaining witness when he asked for some light to get his things together. Due to lack of sufficient evidence that charge was also dismissed.

Counsel for the defendant in his brief argues that the language used by the complaining witness, Alexander Wilson, Sr., amounted to disorderly conduct under Chapter 31, 14 V.I.C. § 622(2).[2]

While admitting that the language as remembered by the witnesses was not "hard core obscenity as commonly understood and defined by the Supreme Court," counsel for the defendant claims it "did have about it the aura of vulgarity and profanity which would warrant an arrest upon probable cause."

---

[2] Whoever maliciously and willfully—
    (1) disturbs the peace or quiet of any village, town, neighborhood or person, by loud or unusual noise, or by tumultuous offensive conduct, or threatening, traducing, quarreling, challenging to fight or fighting; or
    (2) on the public streets, or upon the public highways, or within hearing of such streets or highways, uses any vulgar, profane, or indecent language in a loud and boisterous manner—shall be fined not more than $100 or imprisoned not more than 90 days, or both.

The statute penalizes "vulgar, profane and indecent language in a loud and boisterous manner".

In Territory v. Kaaihaula, 22 Hawaii 204, similar language is defined as follows: "'Vulgar,' meaning low, course[sic], offensive to good taste, or defined feelings; 'profane,' meaning to treat sacred things with contempt, disrespect or irreverence; or 'obscene,' meaning filthy offensive to chastity or modesty;"

The court finds it difficult to characterize any of the language alleged to have been used by the complaining witness during his lecture and as remembered by the witnesses as "profane" or "obscene." It finds, however, that his oft-repeated characterization of the Department of Public Safety as a "cesspool of feces," "filth," as vulgar.

There is no question, as argued by counsel for the Government in his brief, that the rights guaranteed by the first amendment apply equally to the territories of the United States. Territory of Hawaii, International Longshoremen's and Warehousemen's Union v. Ackerman (D.C.Hawaii, 1949), 82 F.Supp. 65, and as contained in the Revised Organic Act of the Virgin Islands. As a consequence, oodles of cases are to be found in which these rights have been defined and upheld by the Supreme Court of the United States and other courts through the years. Therefore, the court finds that the complaining witness, Alexander Wilson, Sr., was within his constitutional rights to conduct a political lecture.

Commenting on the rights guaranteed by the First and Fourteenth Amendments in the case of New York Times Co. v. Sullivan, 376 U.S. 254 (a case cited by the Government), the Supreme Court stated, citing from Whitney v. California, 274 U.S. 357, 376:

"Those who won our independence believed . . . that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks

23

to which human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; that it is hazardous to discourage thought, hope and imagination; that fear breeds repression; that repression breeds hate; that hate menaces stable government; that the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil counsels is good ones. Believing in the power of reason as applied through public discussion, they eschewed silence coerced by law—the argument of force in its worst form. Recognizing the occasional tyrannies of governing majorities, they amended the Constitution so that free speech and assembly should be guaranteed."

The court further states that:

"Thus we consider this case (the New York Times Co. v. Sullivan's case) against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. See Terminiello v. Chicago, 337 U.S. 1, 4; De Jonge v. Oregon, 299 U.S. 353, 356."

Bolstering further the guarantees of the First and Fourteenth Amendments, counsel for the government cites the following cases:

1. Cox v. State of Louisiana (1965) 379 U.S. 536, is a case in which the appellant, leader of a civil rights demonstration, was arrested the next day and was convicted for alleged disturbance of the peace, obstructing public passage and court house picketing. Finding the statute unconstitutional, the Supreme Court held that Louisiana had deprived him of his rights in violation of the First and Fourteenth Amendments.

Justices Clark and Black dissented in one of the cases.

In the case at bar the complaining witness, whose rights are alleged to have been violated, brought criminal action against the officer who construed as disturbance of the peace the utterances of the said complaining witness.

24

2. The New York Times Co. v. Sullivan, supra, is a civil case for libel, in which the court held that a State cannot under the First and Fourteenth Amendments award damages to a public official for defamatory falsehood relating to his official conduct unless he proves "actual malice—that the statement was made with knowledge of its falsity or with reckless disregard of whether it was true or false."

3. Kingsley International Picture Corporation v. Regents of University of the State of New York (1965), is a case which involved the denial of a license to show a motion picture which the State found "alluringly portrays adultery as proper." The Supreme Court held that such construction and application of the New York Statute violated the freedom to advocate ideas guaranteed by the First Amendment.

4. Bridges v. California, 314 U.S. 252, involves conviction of contempt for certain editorials published commenting upon cases pending in a state court, which convictions the Supreme Court held was violative of constitutional rights of freedom of speech and of the press. The alleged contempt was not committed in the presence of the court, but the court, erroneously, found the defendant guilty.

5. In the case of N.A.A.C.P. v. Button, 371 U.S. 415, the Supreme Court in an opinion by Justice Brennan reversed the finding of the Virginia Supreme Court of Appeals which found that a certain statute governing solicitation of legal or professional business was constitutional and applicable to the appellant.

In a very elaborate opinion Justice Harlan dissented.

6. In the case of Roth v. United States (1957), the constitutional question as to whether the federal obscenity statute violated the provision of the First Amendment as to the freedom of the press was involved. The appellant Roth, having been found guilty by the lower courts, appealed his

case to the Supreme Court. While discussing the rights and guarantees of the First and Fourteenth Amendments, the court, in an opinion by Justice Brennan, affirmed the conviction. The court, however, citing the case of Beauharnais v. Illinois, 343 U.S. 250, 266, stated:

"Libelous utterances not being within the area of constitutionally protected speech, it is unnecessary, either for us or for the state courts to consider the issues behind the phrase 'clear and present danger.' Certainly no one would contend that obscene speech for example may be punished only upon a showing of such circumstances. *Libel, as we have seen, is in the same class.*" (Italics added.)

In the above case Justices Black and Douglas dissented.

To the above cases may be added the cases of Edwards v. South Carolina, 372 U.S. 229, in which it was held that:

"In arresting, convicting and punishing petitioners under circumstances disclosed by the record, the State infringed their rights of speech, free assembly and freedom to petition for a redress of grievances—rights guaranteed by the First Amendment and protected by the Fourteenth from invasion by the State."

The convictions were reversed. Justice Clark dissented. In his dissent he stated that:

"The question thus seems to me whether a State is constitutionally prohibited from enforcing laws to prevent breach of the peace in a situation where city officials in good faith believe, and the record showed, that disorder and violence are imminent, merely because the activities constituting the breach claimed elements of constitutionally protected speech and assembly. To me the answer under our cases is clearly in the negative."

With this array of precedents concerning constitutional guarantees under the First and Fourteenth Amendments as cited above, and this court having made findings of fact as to the utterances of the complaining witness, Alexander Wilson, Sr., the question before it is whether the said utterances, made in the presence of the officer, were such as to constitute probable cause that an offense was being committed or about to be committed, thereby giving him the

right or duty to arrest the complaining witness for disorderly conduct as defined by the statute, or request him to desist or discontinue the lecture.

■ Probable cause for an arrest by a peace officer without a warrant is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing accused guilty. State v. Cox, 45 N.W.2d 100, Cook v. Singer Sewing Machine Co., 32P.2d 4430, Garske v. U.S., 1 F.2d 620.

■ Peace officers have authority to make misdemeanor arrests without a warrant for offenses committed or attempted in their presence, 5 V.I.C. 3562, or when they have reasonable grounds to believe that the person to be arrested is committing such violation. It has been held that such a statute merely reiterates constitutional standards of the Fourth Amendment.

■ It has been held that probable cause for an arrest by peace officer without a warrant does not depend upon actual state of the case as it may turn out upon legal investigation, but upon knowledge of facts which would be sufficient to induce a reasonable belief in truth of accusation, and circumstantial evidence may constitute probable cause. State v. Cox, supra.

■ Probable cause necessary as a basis for criminal prosecution does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution. State v. Winne, 91 A.2d 65, 21 N.J. Super. 180.

■ ■ In view of the court's findings that some of the utterances of the complaining witness were vulgar and oft repeated, a kind of speech that the statute proscribes, and considering the other epithets which, though lawful, were offensive and insulting, and as stated by the Supreme Court in Cantwell v. Connecticut, 310 U.S. 296, that "Resort to epithets or personal abuse is not in any proper sense

27

communication of information or opinion safeguarded by the Constitution," it does appear to this court that the officer's "Wilson . . . you are getting out of hand and I have to stop this meeting," was the result of an honest and reasonable belief that there was probable cause that a misdemeanor was being committed or about to be committed in his presence. Having had the right to arrest on probable cause he also had the discretion to waive arrest and prevent further breach of the peace.

When consideration is given to the fact that there have been sharp differences in many cases before the courts involving the interpretation of some of the rights guaranteed under the First and Fourteenth Amendments, as shown by some of the cases referred to above, this court is unable to find that a criminal case, in which the evidence must be beyond a reasonable doubt, has been made out against the defendant, a peace officer.

Consequently, it is the finding and judgment of this court that the defendant Raymond Chesterfield, is not guilty of the crime of oppression, and it is therefore ordered, adjudged and decreed that he be discharged.